GARDNER, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 13, 1906.

1. **CARRIERS OF PASSENGERS: Freight Trains: Regulations.**
A railroad company, being a carrier of both freight and passen-
gers, may use separate trains for each and may exclude passen-
gers from one and freight from the other, and may make and
enforce rules regulating the carriage of passengers on freight
trains and providing the conditions under which they may be so
carried.

2. ———: ———: ———: **Providing Tickets.** But a railroad com-
pany cannot refuse to carry a passenger on a freight train on
account of his failure to comply with its regulation requiring
the purchase and presentation of a ticket, where such failure
was due to the negligence of the company in failing to provide
tickets, and where the passenger was provided with a permit
according to its regulation.

3. ———: ———: **Ejection From Train: Exemplary Damages.**
Where the conductor, under such circumstances, in ordering
plaintiff off the train, became angry, refused to look at his per-
mit and swore at him, this was sufficient evidence of malice to
warrant a verdict for exemplary damages.

Appeal from Franklin Circuit Court.—*Hon. R. S. Ryors,*
Judge.

AFFIRMED.

*L. F. Parker* and *W. F. Evans* for appellant.

(1)   It was the duty of the conductor to obey and
follow the rules of the appellant and to observe the terms
and conditions of the freight-train permit presented to
him by the respondent.   He could not be required to dis-
obey or ignore any of them on the oral statement of the
respondent.   Sire v. Railway, 115 Mo. 127, 21 S. W. 905;
Thomas v. Railway, 72 Mich. 355.   (2)   As the respon-

dent did not present to the conductor of the train from which the former was ejected, transportation or evidence of his right to be carried thereon, required by the rules and regulations of the appellant and the terms and conditions of the freight-train permit, the conductor was entirely justified in requiring him to leave the train. Marshall v. Railroad, 78 Mo. 610-616; Woods v. Railroad, 48 Mo. App. 125-130; Frederick v. Railroad, 37 Mich. 342; Mosher v. Railroad, 23 Fed. 326; Rolfs v. Railroad, 29 Am. & Eng. R. Cas. N. S. 920; McGhee v. Reynolds, 23 South. 68.   (3)   If respondent has any cause of action it is based upon the failure of appellant or its agent at Robertsville to sell or furnish him a ticket—regular transportation—and a certificate, and not upon the act of the conductor in compelling him to leave the train. Mackay v. Railroad, 11 S. E. 738; Pouilin v. Railroad, 52 Fed. 197; Chitty v. Railroad, 148 Mo. 74, 49 S. W. 868. (4)   The appellant had the right to exclude passengers from its freight trains. Farber v. Railroad, 116 Mo. 81, 92, 22 S. W. 631; Whitehead v. Railroad, 99 Mo. 263, 268, 11 S. W. 751. If it permitted the use of such trains by passengers it had the right to prescribe the conditions on which such right or privilege could be exercised. Rail. v. Bartram, 11 Ohio St. 457. The respondent by boarding the train, knowing that he was not supplied with regular transportation and a certificate of the agent at Robertsville, and that for that reason the conductor would be compelled under the rules of the company and the terms and conditions of the freight-train permit, to eject him, was guilty of contributory negligence and cannot recover. Railroad Co. v. Scott, 79 S. W. 642, 643; Field, Dam., sec. 126, et seq.; 1 Suth. Dam., 148. Exemplary or punitive damages cannot in any case be recovered unless a right to actual damages be shown. Hoogland v. Amusement Co., 170 Mo. 335, 70 S. W. 878; Malin & Prowder v. McCutcheon, 76 S. W. 586; Schiffell y. Norton, 38 Kans. 567; State v. Jungling, 116 Mo. 162, 22 S. W. 688; Ickenroth v. St. Louis Transit Co., 102

Mo. App. 597, 77 S. W. 162; Logan v. Railway, 77 Mo. 663; Dorsey v. Railway, 83 Mo. App. 528.

*W. L. Cole* and *Jesse H. Schaper* for respondent.

(1)   It is well-settled law in Missouri and in other jurisdictions that a railroad company may confine the transportation of passengers to its passenger trains, and the transportation of freight to its freight trains; or it may provide that passengers may be carried on freight trains under certain reasonable rules and restrictions, as for instance the rule requiring persons to procure tickets before attempting to take passage on freight trains; but the law imposes the duty on the part of the company, where such rules and restrictions are attempted to be enforced, to furnish reasonable facilities for the purchase of tickets, or else may not discriminate as for want of tickets.   Jones v. Railroad, 17 Mo. App. 158; 2 Rorer on Railroads, 985, sec. 18.   (2)   The principal facts in the case at bar are undisputed.   They are that plaintiff performed all of the conditions on his part to be performed under the permit issued to him by defendant; that although defendant maintained and kept a station, ticket office and agent in charge thereof at Robertsville, it failed to furnish plaintiff with regular transportation and certificate from such agent, but in lieu of same, it did by its authorized agent direct plaintiff to take passage on the freight train in question, and plaintiff acting in accordance with such directions, in good faith and without notice from defendant to the contrary, did take passage on such train and thereafter was ejected from such train by defendant.   It follows that, on the case so made, plaintiff was a passenger, and defendant, having thus disregarded its duty to the injury of plaintiff, is bound to respond in damages.   Cross v. Railroad, 56 Mo. App. 664; Rawlings v. Railroad, 97 Mo. App. 515, 71 S. W. 534; Railroad v. Flagg, 43 Ill. 364; Railway v. Price, 96 Pa. St. 256; Railway v. Huggins, 89 Ga. 494.

STATEMENT.—In 1904, plaintiff was a traveling salesman for a wholesale grocery house in the city of St. Louis. His territory was from Pacific, Missouri, along the St. Louis & San Francisco railroad to Dixon, Missouri, in Pulaski county. To enable him to ride on the local freight trains of defendant company, plaintiff procured the following permit from its general manager.

PERMIT.

"Frisco System. St. Louis & San Francisco R. R. Co.
"No. 748.                          Form M.
    "*Freight Train Permit.*
        "January 4, 1904.
    "On presentation of this permit, accompanied by regular transportation and certificate of agent at point of origin of the trip, conductors of freight trains, authorized to carry passengers, will carry—
        "Mr. D. N. Gardner (hereinafter called the 'Permit Holder') between points shown on station agent's certificate, Form N, on date indicated thereon, unless otherwise ordered.
        "Valid only when countersigned by A. Hilton.
"Counter Signature:          B. J. WINCHELL,
        A. HILTON.    Vice-President & Gen. Mgr.
[(Over)

"RELEASE.

"Said permit holder hereby acknowledges that he is advised that trains will not stop at other than their regular stopping places; that passenger coaches will not be provided; that way cars will not be set to station platforms; that sudden jerks and jars are always incident to the operation of freight trains; that no baggage will be handled by the employees of said

company on or for such trains; that these trains are not equipped for the carriage of passengers, and do not carry passengers as a common carrier.

"In consideration of this special permit, said permit holder assumes all risk of accident and injuries to his person or property while on said trains, whether resulting from negligence of said railroad company, or otherwise, and agrees that as to said trips, said railroad company shall be deemed a private carrier and not a common carrier; and agrees to and hereby does release, discharge, indemnify and hold harmless said company from and against any claims or demands for such injuries.

"Executed in duplicate.

D. N. GARDNER.

"Witness: R. S. Martin.

"Good until December 31, 1904, unless otherwise ordered."

During the year 1904 the defendant company had posted in all its ticket offices the following rules in respect to carrying passengers on local freight trains:

"Freight-train permits and agents' certificates will be required of all passengers carried on freight trains, except as noted below. These freight-train permits and agents' certificates are to be used only on such freight trains as under current rules (see current time tables) are permitted to carry passengers.

"Freight-train permits will be issued by the general passenger agent on requests of agents of this company only, and original permits are to be delivered by agents to persons for whom intended after obtaining signature of proper persons to releases on original and duplicate permit. Such signatures must be witnessed by agent of this company. Duplicate permits must be promptly mailed to the general passenger agent.

"Freight-train permits are not valid in any instance

unless accompanied by agent's certificate, form 92, and the latter will be issued by agents only upon presentation of a freight-train permit properly filled out and countersigned, and also after release on the back of the freight-train permit has been signed by the holder. But one certificate will be issued by an agent on one permit at one time.

"Freight-train permits will be mailed to persons desiring to use them.

"Agents' certificates, form 92, will be obtained by requisition on the general passenger agent, in the same manner as ordinary ticket stock. In issuing certificates to passengers, agents may write both original and duplicate in ink, or use indelible pencil and carbon.

"Those desiring freight-train permits should make application for them to local agents, who will refer all such requests to the general passenger agents.

"The greatest care should be exercised in filling out certificate form 92, and all instructions pertaining to freight-train permits closely observed.

"Freight-train permits must in all cases be presented to conductors with proper certificates and transportation.

"EXCEPTIONS.

"Freight-train permits will not be required to enable passengers to ride on freight trains as follows:

"On trains Nos. 271 and 272, on the Current River Branch.

"On trains Nos. 339 and 340, locally between Oswego and Mound Valley.

"The provisions of this circular will not apply to passengers traveling between local points within the State of Arkansas. Passengers traveling from any point in Arkansas to any point within another State, or vice versa, must, however, be provided with freight-train permits and agents' certificates.

"B. L. WINCHELL,
"Vice-President and General Manager."

On September 4, 1904, the plaintiff was at Roberts-ville, in Franklin county, a station on defendant's road, with a grip containing samples, and wished to go to Moselle, a station on defendant's road about six miles west of Robertsville.   A local freight train traveling west, stopped at Robertsville to discharge some freight and plaintiff presented his permit to the ticket agent at Robertsville and demanded a ticket to Moselle, offering to pay the regular fare.   The agent was out of tickets and told the plaintiff to get into the caboose and show his permit to the conductor, pay his fare and get a ticket at Moselle, and he thought the conductor would let him ride.   Plaintiff got on the caboose with his sample case and after the train had proceeded about a mile the conductor appeared and demanded his ticket.   Plaintiff testified that he offered the conductor his permit and a dollar bill and tried to explain to him that he could not get a ticket at Robertsville for the reason there were none to be had.   The conductor would not hear him, seemed to become angry, swore at plaintiff and told him he could not ride on the train without a ticket, and had the train stopped and ordered him off.   Plaintiff got off, walked back to Robertsville and later in the day went into St. Louis on a passenger train.   The conductor denied that he swore at the plaintiff and testified that plaintiff did not show him his permit but only offered him a dollar bill and asked him to take the fare out of it.

Defendant moved the court to instruct the jury that under the law and the evidence the plaintiff could not recover.   The court refused to grant the instruction and gave other instructions, under which the jury found for the plaintiff.   Motions for new trial and in arrest of judgment proving of no avail, the defendant appealed.

BLAND, P. J. (after stating the facts).—1. The contention of defendant is that if plaintiff has any cause of action, it is based upon the failure of the railroad company or its agent to sell or furnish him a ticket and

certificate and not on the fact that he was put off the train by the conductor for the reason he had no ticket. It is well-settled law that a railroad company, being a carrier of both freight and passengers, may use separate trains for freight and for passengers and may exclude freight from one and passengers from the other. [Whitehead v. Railway, 99 Mo. 1. c. 268, 11 S. W. 751; Farber v. Railway, 116 Mo. 1. c. 92, 22 S. W. 631.]

In B. & M. R. R. Co. v. Rose, 11 Neb. 1. c. 181, the court said: "We believe the authorities are generally in accord as to the right of a railroad company to make, and, in a proper manner to enforce, a rule or regulation to carry passengers on its freight trains, either not at all, or only upon the condition that they are provided with tickets, and prohibiting the collection of fare by conductors of such trains;" citing Chicago & Alton R. R. Co. v. Flagg, 43 Ill. 364; Arnold v. I. C. R. R. Co., 83 Ill. 273; Eaton v. Railroad Co., 15 Am. Repts. 513; The C. C. & C. R. Co. v. Bartram, 11 Ohio St. 457; Law v. Cent. R. Co., 32 Iowa 534. A like ruling was made in Thomas v. Railway Co., 72 Mich. 355.

Rorer says: "Their [railroad companies'] business implies a degree of authority almost absolute in the management, conducting and controlling their trains and the persons thereon as necessary for their common safety, and to protect themselves from imposition and wrong. Among these matters of control are . . . the manner and place of procuring tickets, and of paying fare; the evidence thereof required to be shown to the conductors in charge of trains." [1 Rorer on Railroads, p. 227.] The same author, in volume 2, page 986, says: "The company may make and enforce rules against carrying passengers upon freight trains; but if they hold themselves out to the public to carry passengers on such trains, then they are bound to carry accordingly, to the extent and in the manner, in which they thus profess to the public an intent to carry, and must afford a reason-

able opportunity to obtain tickets as in other cases, or else may not discriminate as for want of tickets."

In Chicago & Alton R. R. Co. v. Flagg, 43 Ill. 364, the railroad company regularly carried passengers on its freight trains. Flagg, who was desirous of traveling a short distance on the road, entered the caboose car attached to a freight train without a ticket, which he was unable to procure for the reason the ticket office was closed. The rules of the company forbade the conductor to receive money for fares. Flagg offered to pay the conductor his fare and explained to him that he could not get a ticket for the reason the office was closed. The conductor refused to receive his fare, stopped the train at a water tank and required Flagg to leave the train. The jury gave Flagg a verdict for one hundred dollars, for which judgment was rendered. The judgment was affirmed on appeal. In discussing the case, LAWRENCE, J., writing the opinion, at page 366, said: "When the company requires tickets to be purchased at the station, it must furnish convenient facilities to the public by keeping open the office a reasonable time in advance of the hour fixed by the time-table for the departure of the train. Should it fail to do this, a person desiring to take passage would have the right to enter the train and be carried to his place of destination by payment of the regular fare to the conductor. To permit a company to complain of a violation of its own rules necessitated by the negligence if its own agents, would be absurd. If, then, as is fairly inferable from the evidence, the plaintiff was prevented from buying a ticket by the absence of the ticket agent, he was rightfully on the train, and his expulsion was unlawful."

The texts quoted from Rorer and the Flagg case are approvingly cited in Cross v. Railroad, 56 Mo. App. 664.

But it is insisted that as plaintiff did not hold itself out as a carrier of passengers on its freight trains, and as its permit to plaintiff to be carried on such train

was a private arrangement between the company and the plaintiff, the company did not owe him the same duty it would have owed him had it held itself out as a carrier of passengers on its freight trains—that as to him it was a private carrier. It seems to us this contention is more specious than sound. The defendant had the right to carry or not to carry the plaintiff, or any other passenger, on its freight trains, but when it agreed to carry plaintiff upon such trains at any and all times, when he should desire to travel thereon as to him it was a common carrier of passengers and could not alter this relation by refusing to carry on such trains the traveling public generally or any person other than the plaintiff, and we think both upon reason and authority, plaintiff was wrongfully put off the train and that defendant is liable.

2.   The verdict was for sixty-five dollars actual and seventy-five dollars punitive damages. It is contended by the defendant that the act complained of was not unlawful and wanton or malicious, and for this reason punitive damages should not have been recovered. In actions for personal torts the law in this State is, that punitive damages cannot be recovered unless the act complained of is both unlawful and wanton and malicious. [State v. Jungling, 116 Mo. 162, 22 S. W. 686; Ickenroth v. St. Louis Transit Company, 102 Mo. App. l. c. 616, 77 S. W. 162, and cases cited; Dorsey v. Railway, 83 Mo. App. 528.] Hands were not laid upon the plaintiff by the conductor or any of the train crew; no violence was done or offered to him. Plaintiff testified, however, that the conductor seemed to be angry, cursed and swore at him and refused to look at his permit; that he would not listen to reason, and as he left the train said to him, "By God, the next time you ride on my caboose have the dope." The plaintiff was rightfully upon the train and having, in good faith, offered to pay his fare was entitled to courteous and gentlemanly treatment by the conductor. According to his evidence he

did not receive it, but was grossly insulted by the conductor and wrongfully put off the train. Plaintiff's evidence tends to show that in expelling him from the train the conductor was actuated by malice, and we think the jury was warranted in assessing exemplary damages.

The judgment is affirmed. All concur.