JOHN S. BOLLES, Respondent, v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 11, 1909.

1. PASSENGER CARRIERS: Ejectment of Passengers: Misplaced Ticket: Instructions. Where the passenger had misplaced his ticket an instruction directing the jury that if he told the conductor that he thought the agent had not given him the ticket and left the train at the conductor's suggestion then the verdict should be for the defendant, is held defective

since it did not cover the hypothesis that the conductor had been abusive and had with physical force accelerated defendant's departure from the train whereby he fell and was injured, etc., since an instruction directing a verdict must cover all the facts and submit the whole case of both parties.

2. ———: ———: **Trespasser: Damages.** A carrier is not bound to carry a passenger without his producing and delivering his ticket, but the conductor should not be unreasonably peremptory but should give time to find the ticket, otherwise the ejectment would be wrongful and entitle the passenger to actual damages, and if accompanied with unnecessary force and abuse, or either, to punitive damages.

3. ———: ———: **Misplaced Ticket: Evidence: Baggage Check.** A passenger who had misplaced his ticket showed his baggage check to the conductor as evidence that he had a ticket. *Held*, this fact was admissible in evidence as a part of the *res gestae* and tended to show the conductor's mind and characterize his act as well as to show the status of the passenger.

4. ———: ———: **Punitory Damages: Evidence: Pecuniary Condition.** Plaintiff's pecuniary condition is admissible in an action for personal injury where the circumstances of the case authorize punitory damages.

5. ———: ———: ———: **Instructions.** Where a passenger is wrongly on the train and is rightfully ejected but with insult and abuse he is entitled to recover compensatory damages for his injured feelings but nothing in the way of punitory damages; and an instruction permitting the latter is error.

Appeal from Bates Circuit Court.—*Hon. Charles A. Denton,* Judge.

REVERSED AND REMANDED.

*S. W. Moore, Cyrus Crane, Fred H. Wood* and *H. C. Clark* for appellant.

(1) Defendant's instruction number 5 should have been given. Bagley v. Harmon, 91 Mo. App. 22; Swink v. Anthony, 96 Mo. 420; Dikeman v. Arnold, 71 Mich. 656, 40 N. W. 42; Fiore v. Ladd, 25 Ore. 423, 36 Pac. 372; Wildey v. Crane, 69 Mich. 17, 36 N. W. 734; Miller v. Miller, 97 Mich. 151, 56 N. W. 348; Scarborough v. Blackman, 108 Ala. 656, 18 So. 735. (2)

By refusing defendant's instructions numbers 1, 2 and 5 the court ignored defendant's evidence and theory of the case altogether and submitted the same to the jury wholly on the plaintiff's testimony. Woods v. Railway, 48 Mo. App. 125; Carmody v. Transit Co., 122 Mo. App. 338; Percy v. Railway, 58 Mo. App. 79; Hufford v. Railroad, 53 Mich. 118, 18 N. W. 580; Frederick v. Railway, 37 Mich. 342; Harp v. Railway, 119 Ga. 927, 47 S. E. 206, 100 Am. St. Rep. 212; Norton v. Railway, 79 Conn. 109, 63 Atl. 1087; Nutter v. Railway, 25 Ky. Law Rep. 1700, 78 S. W. 470; Dickson v. New Eng., 179 Mass. 242, 60 N. E. 581; Railway v. Smith (Tex. Civ. App.), 84 S. W. 852; Price v. Railway, 46 W. Va. 538, 33 S. E. 255; Railroad v. Scott, 34 Tex. Civ. App. 642, 79 S. W. 642; Railroad v. Hill, 105 Va. 729, 54 S. E. 872; White v. Railroad, 107 Mich. 681, 65 N. W. 521; Rogers v. Railroad, 57 N. J. Law 703, 34 Atl. 11; Spink v. Railroad, 21 Ky. Law 778, 52 S. W. 1067. (3) Evidence of exhibition of baggage checks and rules of the railway company covering the checking of baggage should have been excluded. Cases supra. (4) The admission of evidence showing plaintiff's financial condition was highly prejudicial and reversible error. Breen v. Transit Co., 102 Mo. App. 479. (5) There was no sufficient evidence upon which to base the instruction that even though the ejection were rightful plaintiff might recover if it were accompanied by malice or abuse. Trigg v. Railway, 74 Mo. 147; Connell v. Telegraph Co., 116 Mo. 134; Kellett v. Railway, 22 Mo. App. 356; Breen v. Transit Co., 122 Mo. App. 479; Grayson v. Transit Co., 100 Mo. App. 60; Snyder v. Railway, 85 Mo. App. 495; Deming v. Railway, 80 Mo. App. 152; Strange v. Railway, 61 Mo. App. 1005; Glover v. Railroad, 129 Mo. App. 563; Rose v. Railroad, 106 N. Carolina 168, 11 S. E. 526; Railway v. Bennett, 50 Fed. 495; Railway v. Hawkins (Ky.), 89 S. W. 258; Gibson v. Railway, 30 Fed. 904; Hall v. Railroad, 15 Fed. 57; Davis v. Railroad, 19 Mo. App.

425; Paine v. Railroad, 45 Iowa 569; Bradshaw v. Railroad, 135 Mass. 407; Townsend v. Railroad, 56 N. Y. 291. (6) It was error to instruct the jury that punitive damages might be assessed if they found that defendant's conductor acted maliciously, without defining malice. Morgan v. Durfee, 69 Mo. 469.

*Pross T. Cross* for respondent.

(1) Plaintiff's status was that of a passenger, and not a trespasser, and he was entitled to a reasonable time to find his ticket. The objection was wrongful. Perkins v. Railway, 55 Mo. 201; Boling v. Railway, 189 Mo. 219; Holt v. Railway, 87 Mo. App. 203; Albin v. Railway, 103 Mo. App. 308. (2) It is the well-settled rule in this State that the carrier is liable in damages for the insulting and abusive language and conduct of its servants, in ejecting persons from its trains for non-payment of fare, and that, too, whether the ejection be wrongful or rightful, and whether there is any physical injury or not. Boling v. Railway, 189 Mo. 219; Smith v. Railway, 122 Mo. App. 85; Glover v. Railway, 129 Mo. App. 563; Rawlings v. Railway, 97 Mo. App. 511; Rawlings v. Railway, 97 Mo. App. 515; Snyder v. Railway, 85 Mo. App. 495; Deeming v. Railway, 80 Mo. App. 155; McGinnis v. Railway, 21 Mo. App. 399; Book v. Railway, 75 Mo. App. 604; Haehl v. Railway, 119 Mo. 325; Hicks v. Railroad, 68 Mo. 329; Perkins v. Railroad, 55 Mo. 201. (3) It was proper to admit evidence of plaintiff's financial condition. Dailey v. Houslon, 58 Mo. 361; Beck v. Darnell, 111 Mo. 506. (4) No error was made by refusing appellant's instruction 5, as asked. (5) Instructions 1 and 2 asked by defendant were properly refused. The word "malice" as used in the instruction was used in the sense in which it is generally understood and used and it was not error of which defendant can complain, to fail to define. But even if the instructions are not definite

enough to cover the case, it will not be reversed for that reason unless the party desiring the instruction has offered one that has been refused.    Kischman v. Scott, 166 Mo. 44; Cottrill v. Krum, 100 Mo. 397; Anchor Mill Co. v. Walsh, 37 Mo. App. 567; Wheeler v. Bolles, 163 Mo. 398; Cornwell v. Transit Co., 106 Mo. App. 140; Lorrimore v. Legg, 23 Mo. App. 645; Edmonstein v. Transfer Co., 3 Mo. App. 503.

JOHNSON, J.—This action is for the recovery of actual and punitive damages on account of the alleged wrongful ejection of plaintiff from one of defendant's passenger trains.  Verdict and judgment were for plaintiff in the sum of five hundred dollars compensatory and one thousand dollars punitive damages, and the cause is here on the appeal of defendant.

Plaintiff, a painter by trade, and a citizen of Lathrop, Missouri, had spent the winter of 1904-05 hunting in the vicinity of Lake Charles, Louisiana.  He and his companion, the witness Fuller, had captured two alligators and two logger-head turtles and had resolved to take them north and to exhibit them for profit.  Accordingly, they brought their animals and their personal baggage to defendant's station at Lake Charles on May 25, 1905, bought two first-class tickets to Kansas City, checked their baggage and boarded a passenger train scheduled to depart at about 8:30 p. m. Lake Charles is the terminus of a branch line which leaves defendant's main line at DeQuincey, about twenty miles to the north.  A plug train is operated on the branch road to connect with passenger trains on the main line.  According to the evidence of plaintiff, he and Fuller were hurried in their departure and when they bought their tickets of defendant's agent, plaintiff put them in his purse, and they hastened to attend to the checking of the baggage.  Plaintiff testified:

Bolles v. Railroad.

"I went in the train and met the conductor there, just had went in the door, two or three steps down, and never got a chance to sit down, he demanded the tickets, I said all right, sir; I opened my purse, I thought I had put them in the purse and I opened the purse and didn't see the tickets; he says, hurry up, says I am in a hurry; I says, just as quick as I can find them, I will produce them, as soon as I can; and I looked in the purse and didn't find them, and it kind of rattled me, and I commenced to hunt in first one pocket and then another; and he says, well, if you ain't got any tickets, says, get off, says we are going to stop up here in a few minutes at a crossing, and you can get off when we stop there; I asked him next, told him I had the tickets, and if he wouldn't give me time to hunt them up; that I had misplaced them some place, but I says give me time and I will get them; he says, you get off at this crossing; says you are nothing but a damned dead beat and hobo, you never had a ticket. . . . He just worked me out—kept telling me to hurry up, go on, get to the door, kept pushing backing me up. . . . Fuller came in there and wanted to know what was the matter, and I told him I had misplaced the tickets and couldn't find them, and he says, well you have got them, I seen you take them, . . . they slacked down right slow for the crossing, and he says, come, get off, and my partner did get off; but I argued the case, that we had to go, that I had all that express on there, and baggage and my business was there, and I nad got them, I says, I have got the tickets, if you will give me time. . . . He just says, you can get off, I am in a hurry, and they pulled on over the crossing, and I kept arguing the case, that I had them, until the train got in good motion again, and he says get off, and he kept talking and talking at me, and I says, wait a minute and give me a chance to find them, and he gave me a shove, and I went down to the ground."

This account of the affair is corroborated by the. testimony of Fuller. Plaintiff and Fuller walked back to the station—the distance was short—and when they entered, the agent asked them why they had not gone on the train. Plaintiff replied that the conductor would not give him time to find the tickets and had put them off. He then opened his purse and there were the tickets. The purse had two compartments and plaintiff while on the train had not thought to look into the one in which he had placed the tickets. They left Lake Charles that night at eleven o'clock and in due time arrived at Kansas City. When the conductor pushed plaintiff off the train, the latter fell in a manner to injure his back. He remained some days in Kansas City and then went to Lathrop, where he engaged a physician, who treated him for his injury for about two months and charged him fifty dollars for his services. Part of the time, plaintiff had to use crutches and finding himself disabled from attending to the show business, he and his partner, Fuller, after giving a few exhibitions which were successful from a pecuniary standpoint, were compelled to abandon the business and to sell the animals, because of plaintiff's inability to do his work. Plaintiff had to fall back on his trade and on account of his weak back, could not do much at that, though he admitted on cross-examination that in September, 1905, he painted a standing flag pole which was one hundred feet high.

The evidence introduced by defendant tends to show that plaintiff and Fuller voluntarily left the train under the erroneous belief that the agent had failed to give them the tickets. The witnesses deny that any harsh language was used, that plaintiff asked for time or that any force was employed. They say he alighted from the train while it was stopped at the crossing and did not fall. The agent's version of what took place at the station on the return of the unfortunate travellers is as follows:

"One was Bolles, he was the man I recognized bought the tickets, and I asked him what was the matter, he says, give me my tickets, you failed to give them to me, and I looked at him, sized him up, of course, took a little time sizing him up, and I says, what is that, and he says, you failed to give me my tickets, I want two more tickets to Kansas City, and I says, are you sure I didn't give you those tickets; he says, yes, sir, you didn't give it to me, and I noticed then that there was another party with him, and he spoke up and says, I saw him pay you for the tickets; I didn't know who the gentleman was at the time, I knew he was a man who was in there just a few minutes before; I says, pull out your pocketbook; he looked at me kind of funny, and I says, pull out your pocketbook; he goes down and takes it out, and I says, open it up; and he opens it up and pulls out two tickets; he kind of laughed and I laughed at him about coming in there and demanding two more tickets, and this party that was with him also began joking with him and jollying him because he come back there demanding two more tickets after having them in his pocket and losing them in his own pocketbook; and the party who bought the tickets, who was Bolles, he then asked me when he could leave town, I told him that night; we had a train out of there about twelve thirty or one o'clock, sometimes the train was late, I couldn't tell him just what time exactly; I says we have a street fair in town, and I says you go on up town and enjoy yourself until train time, and they laughed and left the office."

In the instructions given at the instance of plaintiff, the court permitted the jury to find for him on the hypothesis that the conductor ejected him from the train without giving him a reasonable opportunity to find his misplaced ticket. Defendant admits, in effect, that plaintiff was entitled to go to the jury on the issue thus submitted, but insists that the court erroneously refused to submit to the jury an important defensive hy-

pothesis of fact which finds abundant support in the evidence of defendant. The alleged error involved in this complaint was the refusal of the court to give the fifth instruction asked by defendant, which is as follows:

"The court instructs the jury that if the plaintiff, under the apprehension that the agent had not given him his tickets, and after stating to the defendant's conductor that he believed or thought that the agent had not given him his ticket, left the train at the suggestion of the defendant's conductor, then your verdict should be for the defendant."

The fault of this instruction is that the existence of the facts on which a verdict for defendant is directed therein is not inconsistent with the existence of other facts brought out by plaintiff, which, if true, would entitle him to a verdict. It might be true that when plaintiff failed to find his ticket on looking in his purse and feeling in his pockets, he thought and expressed the conviction to the conductor that the agent had failed to deliver the ticket to him and proceeded to act on the suggestion that he leave the train and return to the station for the ticket, and it also might be true, as asserted in the evidence of plaintiff that the conductor did not credit the statement of plaintiff that he had bought a ticket but insultingly called him a "dead beat" and a "hobo" and with physical force accelerated his departure from the train.

The law is well settled that an instruction which directs a verdict must cover the whole case and not single out only certain facts which may have a tendency to establish one side or the other. It should declare the law applicable to the facts contended for and submit the case to the jury upon the theory of both parties. [2 Thompson on Trials, sec. 2328 and cases cited.]

That plaintiff bought his ticket and boarded the train in good faith are conceded facts. He was not a

trespasser at that time, but a passenger. He was under the duty to produce and deliver his ticket on the demand of the conductor and if he failed or refused to comply with such demand within a reasonable time, such act would give the conductor the right to eject him from the train, since defendant would not be bound to carry him without the production and delivery of the token of his right to be carried as a passenger. Plaintiff's evidence tends to show that the conductor was unreasonably peremptory and would not give him time to find his ticket. If that be true, his ejection was wrongful and entitled him to recover the actual damages sustained by him, and if it was accompanied by unnecessary physical force and insulting language or by either, plaintiff was entitled to punitive damages. The rule thus is stated by us in recent cases:

"Where a passenger who is wrongfully ejected from a train by the conductor sustains no physical injury in consequence thereof and the ejection is unaccompanied by unnecessary force or violence, wilfulness or malice, but is made in good faith under the mistaken belief of the conductor that the passenger is not entitled to ride on the train, the passenger may recover compensation for all the inconvenience, loss of time, labor and expense incurred by him in consequence of the wrongful act, but he may not recover damages for mental suffering or humiliation, nor damages by way of smart money. But where the conductor employs unnecessary force or violence to remove the passenger, or where he assaults him with abusive or insulting language, malice will be presumed and in such case the passenger is entitled to damages on account of his outraged feelings and humiliation and also may recover punitive damages." [Glover v. Railway, 129 Mo. App. 563; White v. Railway, 112 S. W. 278.]

If plaintiff, acting on the supposition that he had

134 App.—45

failed to obtain from the agent the token of his right to travel on defendant's train, was in the very act of leaving it voluntarily and while so doing was assaulted by the conductor with insulting language and physical force, such conduct of the conductor would give to plaintiff the right to recover both actual and punitive damages, since it would be so unwarranted and excessive as to denote oppression and malice. We do not deem it necessary to say more of the instruction under consideration than that, since it failed to refer to the hypothesis last stated, it was defective, and the court was right in refusing to give it.

What we have said sufficiently answers the contention that the court erred in refusing to give other instructions offered by defendant.

Next, it is argued by defendant that the court erred in admitting testimony that plaintiff exhibited his baggage check to the conductor, while the latter was waiting for him to produce his ticket. A rule of defendant also was admitted in evidence over the objection of defendant which provided for the checking of baggage only on the presentation to the agent of a ticket which evidenced the right of the holder to transportation. Defendant is right in saying that the baggage check, of itself, did not constitute a token of plaintiff's right to transportation, and notwithstanding its presentation by plaintiff, the conductor could have demanded the ticket or the payment of cash fare and the refusal or failure of plaintiff to comply with the demand would have justified him in requiring plaintiff to leave the train. [Railway v. Smith, 84 S. W. 852.] A railroad company has the right to regulate its business with its patrons by reasonable rules and regulations and a rule which requires a passenger either to produce a ticket or pay cash fare is reasonable. To hold otherwise might result in subjecting such company to fraud and imposition, since it would enable the purchaser of a ticket to sell it after checking his

baggage on it and, by using his baggage check as a token of his right to transportation, to defraud the carrier into transporting two passengers for one fare.

But it does not follow from the fact that the baggage check could not perform the office of a ticket that the evidence was inadmissible.    It was part of the *res gestae* and had a direct tendency to show that the conductor acted hastily in the face of evidence that plaintiff was acting in good faith and was not on the train as a mere trespasser.    The possession of the baggage check, though not conclusive, certainly tended to corroborate the statement of plaintiff that he had misplaced his ticket and, therefore, was on the train as a passenger.    The status of plaintiff was a very material fact, and evidence which bore on the fact of the conductor's knowledge respecting that status was material to the issue of whether or not the conductor acted maliciously or under the mistaken idea that he was properly performing his duty.

Nor do we find error in the admission of evidence of the pecuniary condition of plaintiff.    The rule is well settled in this State that such evidence is admissible in an action for personal injuries where the circumstances of the case authorize the assessment of punitive damages.    [Beck v. Dowell, 111 Mo. 506; Dailey v. Houston, 58 Mo. 361.]

Finally, objection is urged to the following instruction given at the request of plaintiff:    "Even though the jury may believe from the evidence that the defendant's conductor had a right to eject plaintiff from said train at the time and place in question, yet notwithstanding that fact, if you believe from the evidence that upon that occasion said conductor, in the course of his employment, wrongfully, wantonly and maliciously cursed and abused plaintiff, or used rude and insulting language towards him, then the defendant is liable and your verdict must be for plaintiff."

The rule announced in this instruction is not the law. If plaintiff was rightfully required by the conductor to leave the train and no physical force was used, defendant cannot be held liable in punitive damages. The rule thus is stated by the Supreme Court in Boling v. Railroad, 189 Mo. 219: "But notwithstanding plaintiff had no right to passage over the defendant's road by virtue of said ticket, after the same had expired by virtue of its limitations and the failure of plaintiff to comply with the provisions of her contract with defendant, and while we think that when plaintiff was notified of the invalidity of the ticket and refused to pay the fare to Monett, the conductor had the right to remove her from the train, he had no right to use unnecessary and insulting language to her and thereby hurt her feelings and humiliate her, and if he did so, she was entitled to recover compensatory damages for such injured feelings and humiliation, *but nothing in the way of punitory or exemplary damages.*"

In not restricting plaintiff's recovery to compensatory damages, on the facts predicated, the instruction (especially when read with the other instructions given for plaintiff), in effect, authorized the infliction of punitive damages, even on the theory that plaintiff was given a reasonable time to leave the train, was compelled to leave it, but without physical violence, and suffered no other injury than verbal abuse. There is nothing in the opinion of Glover v. Railroad, supra, from which we have quoted, at variance with the rule stated in the Boling case. In the Glover case, the rules announced were those which pertain to cases where the ejection was wrongful, while the rule now being applied deals with cases where it is rightful but accompanied by unnecessary abuse and insult.

We find no other error in the record, but for that noted, the judgment is reversed and the cause remanded. All concur.