# W. W. CATHEY, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Springfield Court of Appeals, July 7, 1910.

1. **CARRIERS OF PASSENGERS: Rules and Regulations.** Carriers of passengers may adopt reasonable rules and regulations for the orderly management of their business. The rules should in themselves not only be reasonable but they should be administered in a reasonable manner, adapted to the circumstances off each particular case as it arises and not in a rude, harsh or oppressive manner, so as to unnecessarily harass, injure or inconvenience the passenger.

2. ————: ————: **Requiring Passenger to Exhibit Ticket.** A rule that a passenger should exhibit his ticket on request before entering the passenger coach is a reasonable one and compliance therewith may be exacted; but the passenger is entitled to a reasonable opportunity to comply with the rule and the request to exhibit the ticket should be made at the time and place when it can be reasonably complied with. In this case it is held unreasonable to require a passenger to exhibit his ticket as he was getting on a moving train, when to comply with the request would likely have caused him to lose his hold and endanger his life.

3. ————: **Duty of Carriers: Damages: Punitive Damages.** The business of common carriers being with the general public, their agents and servants should be required to observe the rules of ordinary courtesy in dealing with patrons, and where they disregard this duty and in the commission of torts add insult to injury, exemplary damages may be inflicted upon the carrier.

4. ————: ————: ————: **Question for Jury: Excessive Verdict.** The testimony of plaintiff was to the effect that he boarded one of defendant's passenger trains as it was pulling out of the station; while he was on the first step and holding on with his hands, the brakeman demanded his ticket. The plaintiff's ticket was in a pocketbook in his trousers' pocket, and he told the brakeman he would show his ticket when he got on the train; that the brakeman thereupon cursed plaintiff and kicked him in the face; that at the time plaintiff was a cripple and the brakeman knew it. The jury's verdict gave plaintiff $50 actual and $450 exemplary damages. *Held,* that the assessment of exemplary damages was under the evidence a matter of discretion for the jury and the verdict was not excessive.

5. **EVIDENCE: Peremptory Instruction.** It is only where there is an entire absence of testimony as to some allegation of the plaintiff's petition necessary to a recovery and where the facts proven leave no room for ordinary minds to differ as to the conclusions to be drawn therefrom that the court should peremptorily instruct the jury.

6. ————: **Carriers of Passengers: Assault on Passenger.** In a suit against a railroad company for damages for assault on a passenger by a brakeman, committed under circumstances that made the company liable, it was held harmless error to admit evidence showing that the brakeman continued in the employ of the company.

7. ————: ————: **Assault on Crippled Passenger: Damages.** In a suit for damages against a railroad company for assault on plaintiff, a passenger, by a brakeman who demanded that plaintiff show his ticket just as plaintiff was getting on a moving train, it was held competent to show that plaintiff was crippled as tending to show the unreasonableness of requiring plaintiff to produce his ticket under circumstances which would increase the danger to plaintiff and that the crippled condition of plaintiff if known to defendants employees could be considered by the jury in fixing the punitive damages.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) The plaintiff was not entitled to recover in this case, and the court ought to have sustained the demurrer to the evidence. Eads v. Railroad, 43 Mo. App. 536; Berry v. Railroad, 124 Mo. 254; Chilton v. Railroad, 114 Mo. 88; Younger v. Judah, 111 Mo. 303. (2) A regulation by a carrier requiring passengers to purchase tickets before entering trains, is a reasonable regulation. Mills v. Railroad (Tex.), 55 L. R. A. 501; Railroad v. Blythe (Ark.), 126 S. W. 387; Hutchinson on Carriers (2 Ed.), 652; 28 Am. and Eng. Ency. Law (2 Ed.), 201; McGowen v. Railroad (La.), 5 L. R. A. 817; Reese v. Railroad (Pa.), 6 L. R. A. 530; Ammons

v. Railroad (N. C.), 51 S. E. 127; Cross v. Railroad, 56 Mo. App. 664; Gardner v. Railroad, 117 Mo. App. 138; Woods v. Railroad, 48 Mo. App. 132; Bolles v. Railroad, 134 Mo. App. 705. (3) The plaintiff was not entitled to recover exemplary damages in this case, and the court erred in submitting the question of such damages to the jury. McNamara v. Transit Co., 182 Mo. 680; Ickenroth v. Transit Co., 102 Mo. App. 612; Morgan v. Durfee, 69 Mo. 469; Franz v. Hilderbrand, 45 Mo. 121; Bruce v. Ulery, 79 Mo. 322; Brown v. Road Co., 89 Mo. 154; State v. Jungling, 116 Mo. 166; Welsh v. Stewart, 31 Mo. App. 381; Witascheck v. Glass, 46 Mo. App. 214; Pruitt v. Quarry Co., 33 Mo. App. 22. (4) The court erred in permitting the plaintiff to show that the defendant retained the brakeman in its employ. Haehl v. Railroad, 119 Mo. 342; Railroad v. Gordon, 143 Fed. 95, 74 C. C. A. 292.

*H. E. Doerner* for respondent.

(1) A carrier of passengers is bound to afford reasonable facilities to enable a passenger to comply with its rules and regulations. Railroad v. Flagg, 43 Ill. 364; Brown v. Railroad, 38 Kan. 684; Railroad v. Graham, 3 Ind. App. 28; Cross v. Railroad, 56 Mo. App. 677; Railroad v. Murden, 86 Ga. 434; Railroad v. Rosenzweig, 113 Pa. St. 519; 26 Am. and Eng. R. R. Cases 489; Baltimore v. Blocher, 27 Md. 277. (2) And they are required to give the passenger a reasonable opportunity to comply with such rules. Gardner v. Railroad, 117 Mo. App. 146. (3) And the question as to what would be a reasonable time is a question of fact for the jury to determine. Burks v. Stam, 65 Mo. App. 455; Pierce Co. v. Siegel, 60 Mo. App. 148; Fischer v. Anchor Line, 15 Mo. App. 577. (4) Because of the contractual relations between a carrier and its passengers, the former is liable for every unjustifiable assault upon the latter by its servants in charge of their transportation.

Railroad v. Whitman, 79 Ala. 328; Sherly v. Billings, 8 Am. Rep. 451; Railroad v. Savage, 110 Ind. 156. (5) A brakeman who kicks a person as the latter is about to attempt to board a moving train, renders the company liable for the injuries resulting from his act. Molley v. Railroad, 10 Daly 453; Smith v. Railroad, 39 L. J. C. P. 349; Priest v. Railroad, 40 How. Pr. 456; Murray v. Boyne, 42 Mo. 472; State v. Griffen, 87 Mo. 608; State v. Gamble, 199 Mo. 427. (6) Where an act is wrongful, malicious and without probable cause, and the ejection is done with unnecessary violence, an assessment of exemplary damages by the jury is proper. Glover v. Railroad, 129 Mo. App. 563; Knight v. Railroad, 120 Mo. App. 311. (7) If an agent of a carrier is unreasonably peremptory in demanding a passenger's ticket, and does not give him time to find it before ejecting him, the ejection is wrongful, entitling the passenger to actual damages, and if it is accompanied with unnecessary force and insulting language, or either, the plaintiff is entitled to punitive damages. Belles v. Railroad, 115 S. W. 462; White v. Railroad, 132 Mo. App. 339; Randell v. Railroad, 102 Mo. App. 342.

NIXON, P. J.—This was a suit brought by the plaintiff to recover actual and exemplary damages by reason of an alleged assault by a brakeman of the defendant upon the plaintiff while the plaintiff was a passenger and was about to enter one of defendant's trains at Steele, Mo., while the train was in motion.

The petition, in substance, states that the brakeman of the defendant violently, wilfully and maliciously assaulted the plaintiff and kicked him in the face while he was trying to enter the train, and that by reason of said assault, plaintiff was bruised, his gums lacerated, and his teeth loosened. The charge for exemplary damages is that the brakeman wickedly, wilfully and maliciously kicked the plaintiff by which the plaintiff suffered great mental anguish, mortification and humiliation and in-

curred great expense for medical treatment. Plaintiff asked actual damages in the sum of one thousand dollars, and punitive damages in the sum of five hundred dollars.

The defendant in its answer pleaded first a general denial; also, that by the rules and regulations of the defendant, no person was allowed to enter upon its trains without having a ticket and exhibiting the same, which rule applied to all stations at which tickets were for sale, which included Steele; that the plaintiff failed to comply with this rule, but forcibly attempted to board the train without a ticket or without exhibiting it if he had one; that the force used was no more than necessary under the circumstances.

The reply was a general denial.

The case was tried before a jury which rendered a verdict for the plaintiff for fifty dollars actual and four hundred and fifty dollars exemplary damages. The cause is here on defendant's appeal.

The evidence offered by the plaintiff tended to show that on the morning of the 8th day of October, 1908, he bought a passenger ticket from the agent of the defendant at Steele authorizing passage on defendant's train to Caruthersville and return. That after he bought his ticket he started to get on the train which at the time was moving off; that an unusual crowd of people boarded the train that morning at Steele and that the train remained but a few moments, and that when plaintiff started to board it, the train was in motion. His evidence further showed that R. M. West was the brakeman on the train and as such demanded that plaintiff show his ticket. Plaintiff's evidence shows that he offered to show the brakeman the ticket when he got in the car; that at the time the demand was made for his ticket, the plaintiff was on the first step from the ground and the brakeman was on the last step going onto the car, and the train was moving; that plaintiff had hold of the rail with his right hand; that when West demanded that

he show his ticket, he said, "You God-damned son-of-a-bitch, you can't ride on this train without showing your ticket," and kicked the plaintiff in the mouth; that West did not give the plaintiff time to produce his ticket. That the plaintiff had a ticket in his right-hand trousers' pocket at the time; that there was a clasp around the pocketbook, and that on that account he did not have an opportunity to show his ticket to the brakeman, but offered to do so when he got on the train; that the reason he did not get on the train sooner was on account of the crowd. That he called the brakeman no vile names and that he was not drinking at the time. That he did not know that it was a requirement of the company that he should show his ticket before going on the train and that if he had known it he would have had his ticket ready; that he had previously ridden on the trains of the defendant without showing his ticket before boarding the train, and that at such times R. M. West was the brakeman and had not required him to show his ticket. That by reason of the assault, his teeth were knocked loose, that his mouth swelled and became red, and that his gums were bleeding that morning and night and continued to bleed for three or four days. That at the time of the assault, he had been picking cotton, earning $2.50 per day. That the first time he knew the brakeman wanted him to show his ticket was when he was already on the first step while the train was moving off. This is the plaintiff's version of the affair and of the occurrence by which he received his injuries.

The necessity of common carriers of passengers adopting rules and regulations for the orderly management of their business is apparent on the slightest examination. It has been accordingly often and uniformly held by the courts that a rule and regulation that a passenger should exhibit his ticket on request before entering the passenger coach is a reasonable rule and that compliance therewith might be exacted. But it is apparent that the mere adoption of such a rule, however

reasonable, does not end the responsibility of the carrier. A rule, like a law, is made to be enforced, and only serves its purpose when made effective by proper administration. The servants of the carrier who are entrusted with such administration are charged with a duty to the public as well as to the carrier. The rules should in themselves not only be reasonable, but they must be administered in a reasonable manner, adapted to the circumstances of each particular case as it arises, and not in a rude, harsh or oppressive manner so as to unnecessarily harass, or inflict unnecessary injuries and inconvenience upon the passenger.

The circumstances upon which liability is based in this case have been shown in detail. When plaintiff was asked to show his ticket, he says he told the brakeman he would show the ticket when he got on the train or pay his fare, and that the brakeman without giving him further opportunity, with a volley of profanity and in an angry manner violently kicked him in the mouth, knocking him from the moving train to the platform where he was caught and prevented from falling. Under this presentation of the facts, the rule that a passenger should exhibit his ticket, as actually enforced in this case, was unreasonable. The demand for the passenger's ticket should have been made in a proper manner by the servant of the company before the passenger entered upon the car, and a sufficient time for compliance should have been given before the train commenced to move away. The plaintiff was entitled to a reasonable opportunity to comply with the rule while he was still on the platform, and a reasonable enforcement of the rule requires the demand to be made at that time, and not after the passenger has entered upon a step of the car of a moving train. He was also entitled to an opportunity to find his ticket; and the demand should have been made, as we have said, before the train was put in motion and before the plaintiff had entered upon the step of the car. [Bolles v. K. C. S. Ry. Co., 134

Mo. App. 705, 115 S. W. 459.] In this case, the evidence tended to show that no opportunity was given plaintiff to comply with the request, and that an attempt to get his ticket, under the circumstances, when it was first demanded by the brakeman would likely have caused him to lose his hold on the car and endangered his life or limb by falling, caused by the motion of the moving train.

It is insisted by the defendant that its demurrer to the evidence at the conclusion of the case should have been sustained. It is unnecessary to say that in case of a demurrer to the evidence, the court must indulge every reasonable inference of fact in favor of the party offering the evidence. It is only when there is an entire absence of testimony as to some allegation of the plaintiff's petition necessary to a recovery and where the facts proven leave no room for ordinary minds to differ as to the conclusions to be drawn therefrom that the court should peremptorily instruct the jury. To pursue any other course would be to substitute the opinion of the court for that of the jury, the tribunal established by law for the purpose of arriving at the facts. [Wilson v. Board of Education, 63 Mo. 137; O'Hare v. C. & A. R. Co., 95 Mo. 662, 9 S. W. 23; Bender v. St. L. & S. F. R. Co., 137 Mo. 240, 37 S. W. 132; Walsh v. Morse, 80 Mo. 568; Moody v. Deutsch, 85 Mo. 237.]

While passengers are obliged to conform to regulations of carriers, a corresponding duty is imposed on the latter to show all becoming courtesy towards the former in demanding compliance with its rules, and the carrier is required to afford reasonable facilities and reasonable opportunity to comply with its rules and regulations. It was a question for the jury, under the conflicting evidence in this case, whether the plaintiff was guilty of such misconduct as to forfeit whatever duty the defendant owed him as a passenger so that he became a trespasser. [Baltimore, etc., R. Co. v. Blocher, 27 Md. 277; Cross v. K. C., F. S. & M. R. Co., 56 Mo. App. 664;

Gardner v. St. L. & S. F. R. Co., 117 Mo. App. 138, 93 S. W. 917; Burks v. Stam, 65 Mo. App. 455; Pierce Steam Heating Co. v. Siegel Gas. Fixture Co., 60 Mo. App. 148.]

It is further contended that the court admitted incompetent evidence over defendant's objections as to the crippled condition of plaintiff, and as to whether that condition interfered with his getting on the train sooner. We think the court committed no material error in this respect. The fact was a part of the *res gestae,* and there was evidence to show that the brakeman, West, knew the plaintiff's crippled condition. As to whether that condition would have increased the danger of the plaintiff if he had undertaken to comply with the demand to show his ticket under the circumstances was a question for the jury to determine, and it was competent evidence for that purpose.

It is further objected that the court admitted incompetent evidence over the defendant's objection as to whether the railroad company subsequent to the injury continued the brakeman in its employ. That this evidence would not tend to ratify the acts of the brakeman may be admitted. But no evidence was required for that purpose. As the evidence of the brakeman himself introduced by the defendant showed that he was within the scope of his employment at the time, no proof of ratification was necessary, and the admission of evidence that he was continued in the employ of the defendant would be at most a harmless error, and consequently does not authorize a reversal of the judgment.

Further error is assigned by the appellant on account of the damages being excessive. The verdict was for fifty dollars actual and four hundred and fifty dollars exemplary damages. It is to be noted in this case that there are two versions of the facts, one by the plaintiff and the other by the brakeman, and they are entirely irreconcilable. The jury, as judges of the facts, undoubtedly accepted the plaintiffs version of the assault.

This they had a right to do as the triers of the fact. The evidence of the plaintiff tended to show that he had a ticket, but that demand for the same was not made until the train was moving off; that he was given no opportunity to get his ticket, but that the brakeman who was standing above him, with a volley of profanity and in an angry manner, wilfully, maliciously and viciously kicked him in the mouth, inflicting serious and painful injuries. Under these circumstances, certainly the actual damages of fifty dollars cannot be said to be excessive. The law, as uniformly declared by the courts, is that the business of common carriers being with the general public, their agents and servants should be required to observe the rules of ordinary courtesy in dealing with patrons, and where they disregard this duty and in the commission of torts add insult to injury, exemplary damages should be inflicted upon them. [Knight v. Quincy, O. & K. C. R. Co., 120 Mo. App. 311, 96 S. W. 716; Glover v. Atchison, T. & S. F. Ry. Co., 129 Mo. App. 1. c. 574, 108 S. W. 105.]

The jury assumed the responsibility under the law to ascertain the facts, and believed that the plaintiff had bought a ticket and in good faith entered upon the step of the coach and was given no opportunity to show his ticket after demand was made, but that the brakeman wilfully and maliciously and viciously kicked him in the mouth. This presented a proper case for the assessment of punitive damages. The instructions of the court properly declared the law to be that if the jury found that the assault upon the plaintiff was made wrongfully, wilfully and maliciously, they might award him as punitive damages such sum as they thought under the facts and circumstances would be a fair and just punishment to the defendant for such conduct, and to prevent a like occurrence in the future. The question of punitive damages under the evidence in the case was largely a matter of discretion for the jury. In connection with this question, West, the brakeman, testified:

"I did not kick him any harder than I intended to; intended to kick him just as hard as I did; kicked him with my right foot; I belted him just as hard as I could. I was twenty-six years old at that time and weighed 173 pounds and was an ordinarily stout man. Didn't notice that the plaintiff had only one foot at the time; I paid no attention to that; it wouldn't have made any difference." When this evidence, introduced by the defendant, is considered, and the nature of the injuries plaintiff received is considered, the jury may have taken a more humane view than did the defendant's witness, the brakeman. And while the kicking of a crippled passenger may have made no difference with the brakeman, it may have been considered by the jury in estimating the amount of punitive damages. Under the evidence we do not feel that the judgment is so excessive as to warrant the conclusion that it was the product of bias, prejudice or passion on the part of the jury.

Finding no error in the record, the judgment is affirmed. All concur.