HARRIET R. ARMSTRONG et al. v. MODERN BROTHERHOOD OF AMERICA, Appellant.

Division Two, July 5, 1912.

1. INSURANCE: Fraternal Association: Certificates Payable to Legatee. The mere fact that a member of a fraternal beneficiary association, organized under the laws of another State and licensed to do business in this State, may procure a certificate payable to some person not specifically designated in the Missouri statute (for instance, to legatees of its members), does not have the effect of converting said association into an old-line insurance company. Though the word legatee does not appear in the Missouri statutes as one of the persons named to whom the certificate may be made payable, yet the fact that certificates of such association are issued in favor

of legatees does not tend to impair or endanger its financial standing, nor does it destroy the purposes for which it was organized. [Disapproving Dennis v. Modern Brotherhood of America, 119 Mo. App. 210.]

2. ——: ——: ——: **Suicide as a Defense.** Suicide as a defense to a certificate of insurance made payable to the insured's wife and son is not to be denied on the ground that the fraternal beneficiary association issuing it had the power, by its by-laws and the statutes of its State, to issue certificates payable to legatees; nor is such association, because it has such power, to be considered as an old-line insurance company.

3. ——: ——: **Distinguishing Character.** The dividing line between fraternal beneficiary associations and old-line insurance companies is that such associations are organized to protect their members and such other persons as are proper subjects of their benevolence, and are not to be used for profit to the persons organizing them or carrying on their business; while the old-line insurance companies are organized primarily for profit to the persons owning their corporate stock.

4. ——: ——: **Certificates Payable to Legatees: Action of Insurance Commissioner.** The ruling of the Superintendent of Insurance, who issues to a foreign company, empowered by its by-laws and the statutes of its State to issue certificates payable to legatees, a license to do business in this State, is not conclusive upon the court that such company is a fraternal beneficiary association, but where there is real doubt as to the meaning of the law the courts will usually follow the construction he by that act places upon it.

Appeal from Ralls Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED.

*Ball & Sparrow* for appellant.

(1) Armstrong having committed suicide, respondents cannot recover, provided appellant is a fraternal benefit society. Armstrong agreed in his application for membership, that in the event of his death by suicide his benefit certificate should become null and void. The benefit certificate issued to him contained a provision to the same effect. Respond-

ents having admitted on the trial of this case that
Armstrong committed suicide the law is well settled
that they cannot recover in this action, provided ap-
pellant shows itself to have been doing the business of
a fraternal benefit society in Missouri, within the pro-
visions of the law of said State governing such socie-
ties. Morton v. Royal Tribe of Joseph, 93 Mo. App. 92;
Brasfield v. M. W. A., 88 Mo. App. 208; Hudnall v.
M. W. A., 103 Mo. App. 356; Shotliff v. M. W. A.,
100 Mo. App. 138; McDermott v. M. W. A., 97 Mo.
App. 636. (2) Appellant is a fraternal benefit so-
ciety within the meaning of Sec. 1408, R. S. 1899.
At the time of issuing Armstrong's benefit certificate,
as well as at the time of his death, fraternal benefit
societies, both domestic and foreign, were defined, gov-
erned and controlled by Secs. 1408-1428, R. S. 1899.
For appellant to be a fraternal benefit society within
the meaning of Sec. 1408, the following conditions
must exist: First: The society must be organized
for the sole benefit of its members and their bene-
ficiaries, and not for profit. Appellant fills this re-
quirement. Second: It must have a lodge system
with ritualistic form of work and representative form
of government. Appellant has each of these. Third:
It shall make provision for payment of benefits in case
of death, and may make provision for benefits in case
of disability, accident or old age. Appellant makes
all of these provisions. Fourth: The funds with
which these benefits are paid must be raised by assess-
ments, beneficiary calls and dues collected from its
members. This is the only way the appellant has of
raising funds for such purposes. It is our insistence
that that part of Sec. 1408, R. S. 1899, designating the
class of persons to whom benefit certificates may be
made payable, is no part of the definition or descrip-
tion of a fraternal benefit society, and our conten-
tion is supported by sound reasoning, and by the
weight of authority in this State. Pauley v. M. W. A.,

113 Mo. App. 473; Loyd v. M. W. A., 113 Mo. App. 19. A forceful illustration of the rule that a foreign corporation will not be denied recognition in this State, in the capacity in which it seeks admission, simply because its charter powers in its home jurisdiction are broader than those which it is permitted to exercise in this State is afforded in the case of State ex rel. v. Cook, 171 Mo. 348. Tice v. Lodge, 123 Mo. App. 85, 204 Mo. 349; Westerman v. Lodge, 196 Mo. 670.

*E. L. Alford* and *J. O. Allison* for respondents.

BROWN, P. J.—Action on a life insurance policy. From a judgment for plaintiff in the circuit court of Ralls county, Missouri, defendant appealed to the St. Louis Court of Appeals, where the judgment of the circuit court was reversed and the cause certified to this court; the opinion of the St. Louis Court of Appeals being in conflict with the decision of the Kansas City Court of Appeals in the case of Dennis v. Modern Brotherhood of America, 119 Mo. App. 210.

The defendant brotherhood was organized under the laws of Iowa, and is licensed to transact business in Missouri. On November 26, 1902, after the defendant brotherhood had been licensed to carry on its business in Missouri, one John A. Armstrong, a citizen of Missouri, became a member of said brotherhood, and procured therefrom a beneficiary certificate in the sum of $1,000, payable at his death to his wife, Harriet R. Armstrong, and his son, Charles M. Armstrong, who are the plaintiffs in this action. This certificate contained a proviso that if the said John A. Armstrong committed suicide the certificate should become null and void and all rights thereunder absolutely forfeited.

The petition is based upon the beneficiary certificate above mentioned. The answer admits that said John A. Armstrong paid all his dues to the defend-

ant brotherhood up to the first day of March, 1905, on which day he committed suicide. Plaintiff's reply does not deny the suicide, but as a defense to that part of the answer in which suicide is pleaded, alleges that defendant is not a fraternal beneficiary association under the laws of Missouri; that the certificate was not issued in compliance with the laws of our State; and, therefore, the provision in the policy that the same should be forfeited in case of the suicide of the insured, is illegal and without effect, being in violation of Sec. 7896, R. S. 1899 (Sec. 6945, R. S. 1909).

It is conceded that the defendant was licensed to transact business in Missouri as a fraternal beneficiary association under the provisions of Sec. 1410, R. S. 1899 (Sec. 7112, R. S. 1909), and that under its by-laws and the statutes of Iowa it could issue certificates for the benefit of legatees and legal representatives of its members.

The trial court held that because defendant was authorized to issue benefit certificates to classes of persons not designated in the laws of Misouri, to-wit, legatees and legal representatives, it should be treated as an old-line insurance company.

The laws of Missouri, Sec. 1408, R. S. 1899 (Sec. 7109, R. S. 1909), provide that fraternal beneficiary associations may issue their certificates of insurance in favor of "the families, heirs, blood relatives, affianced husbands or affianced wives of, or to persons dependent upon, the member." It will thus be seen that the laws of Iowa as well as the by-laws of the defendant authorize fraternal insurance in behalf of at least one class of persons not authorized by the laws of Missouri.

The issue presented is whether or not the by-laws of the defendant and statutes of Iowa, under which it is acting, are so different from the laws of Missouri that it cannot properly be classed as a fraternal beneficiary association, and should therefore be denied

the immunities granted to fraternal beneficiary associations incorporated under the laws of Missouri, and subjected to the same restrictions placed upon old-line insurance companies, particularly by Sec. 7896, R. S. 1899, Sec. 6945, R. S. 1909, which ordains that suicide shall be no defense to an action on a life insurance policy, unless it can be shown to the satisfaction of the jury or court trying the case, that the party to whom the policy was issued contemplated suicide at the time of making the application therefor.

There is no proof in this case that John A. Armstrong contemplated suicide when he procured the beneficiary certificate which forms the basis of this action.

The Kansas City Court of Appeals, after considering this identical proposition with great care in another suit, arrived at the conclusion that this defendant is not entitled to the immunities of a fraternal beneficiary association of Missouri, and should not be allowed to set up, as a defense to an insurance policy issued by it, the suicide of the member to whom the certificate was issued. [119 Mo. App. 210.] In the instant case, the St. Louis Court of Appeals has taken exactly the opposite view of the law which must govern the decision of this case.

Since this case was certified to this court, a similar issue has again been presented to the St. Louis Court of Appeals, in the case of Ordelheide v. Modern Brotherhood of America, 158 Mo. App. 677. In the latter case, REYNOLDS, J., has reviewed the law governing fraternal benefit associations with great learning and industry, and has arrived at the conclusion that the words "legal representatives" as used in defendant's by-laws, and the statutes of Iowa under which it is operating, do not embrace administrators or executors, but apply only to persons who would inherit from the insured by consanguinity. We agree in what is said by Brother REYNOLDS to the effect that

the words "legal representatives" do not constitute a separate class of beneficiaries; and after a careful review of all the authorities cited, we have arrived at the conclusion that the defendant is a fraternal beneficiary association; and therefore may plead the suicide of Armstrong as a defense to this action.

Sec. 1408, R. S. 1899 (Sec. 7109, R. S. 1909), under which the certificate in suit was issued, defines a fraternal beneficiary association to be a voluntary association "formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each association shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provisions for the payment of benefits in case of death, and may make provisions for the payment of benefits in case of sickness, temporary or permanent physical disability, either as the result of disease, accident or old age."

The main dividing line between fraternal beneficiary associations and old-line insurance companies is that the former are organized to protect their members and such other persons as are proper subjects of their benevolence, and *not for profit* to the persons organizing or carrying on such associations; while the old-line insurance companies are organized primarily for profit to the persons who own their corporate stock.

We do not think the mere fact that a member of one of these fraternal organizations may procure a certificate payable to some person not specifically designated in the statute, should have the effect of destroying the purposes of the association and putting it in the same class as old-line companies.

The fact that defendant issues beneficiary certificates in favor of the legatees of its members, does not tend to impair or endanger its financial standing or to destroy the purposes for which it is organized.

In fact, its ability to issue such certificates tends to promote its growth and welfare. The larger the membership of defendant's fraternity, the smaller will be the *per capita* expense of insuring its members.

The success of an association of the character of defendant in a large measure depends upon its ability to gather into its fraternity and retain a large number of persons of congenial ideas, possessing the qualifications required by its charter and by-laws. The power of defendant to insure the lives of its members for the benefit of persons selected by such members, is no doubt the chief inducement which it holds out to the public to secure members; consequently, anything which tends to bring to it more recruits possessing the proper qualifications, the greater will be its prosperity and financial standing.

It is a well-known fact that many persons possessing the necessary qualifications to become members of a fraternity like defendant, do not have "relatives, dependents, affianced wives," etc., for whom they entertain such a degree of affection or friendship as to prompt them to secure insurance. Such persons would naturally refuse to join the defendant's fraternity, if not allowed to take out policies in favor of other persons of a class not mentioned in Section 1408, R. S. 1899.

On the other hand, by allowing its members to insure their lives for the benefit of their legatees, it may secure many members which it could not otherwise obtain.

It is the common experience of mankind that in making wills, testators do not bequeath substantial legacies except when there is a strong reciprocal affection or friendship between the testator and legatee; and we see no reason why the act of insuring life for the benefit of a legatee would be more likely to shorten the life of the insured than if the certificate was in favor of a "blood relative."

The decision of the Kansas City Court of Appeals (119 Mo. App. 210) proceeds upon the theory that the statutes having designated certain classes of persons for whose benefit certificates of insurance may be issued by fraternal insurance companies, the power to issue such certificates in favor of any other class of persons destroys the fraternal character of the association. This conclusion rests upon a cold, barren technicality, such as is often invoked in criminal cases; but we are not informed of any rule which requires the insurance laws to be construed as rigidly as the criminal code. We think the rule announced in the last mentioned case is erroneous.

The learned Insurance Commissioner who issued the license to the defendant to carry on its business in the State of Missouri was evidently of the opinion that the power possessed by it to insure legatees would not destroy its character as a fraternal beneficiary association. His ruling upon this point is not conclusive upon us; but where there is real doubt as to the meaning of the law, we usually follow the construction placed upon it by the executive officer of the State charged with the duty of enforcing it. [Westerman v. Supreme Lodge K. of P., 196 Mo. 670, l. c. 709; and cases there cited.]

The insured, John A. Armstrong, evidently believed defendant to be a fraternal beneficiary association, for he so treated it in his application for membership and insurance. He also agreed in writing that in case he committed suicide, whether sane or insane at the time, his policy should by that act become void.

No doubt the members of defendant's order in Missouri have invested large sums of money in purchasing insurance on the theory and with the understanding that it is a fraternal beneficiary society, and not an old-line insurance company.

The good faith of its members in purchasing insurance of defendant was based on the action of the Insurance Commissioner in granting it a license to transact business in Missouri.

To uphold the policy according to its terms, will mislead or injure no one; but to treat the policy as if issued by an old-line insurance company, will amount to a great hardship upon thousands of persons who have acted in good faith.

The construction placed upon the law by the Insurance Commissioner was a reasonable one, and not in violation of any express statute; and therefore, we decline to hunt up or consider any hair-splitting technicalities in order to find an excuse for nullifying his official act.

The suicide of John A. Armstrong constitutes a complete defense to the plaintiffs' cause of action. The judgment of the circuit court of Ralls county is reversed.

*Kennish* and *Ferriss, JJ.,* concur.