MARY L. NEWLAND, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. FRATERNAL BENEFICIARY ASSOCIATION: Affirmative Defense: Suicide. The plaintiff seeks to recover on a death benefit certificate issued to her husband, who committed suicide. The certificate stated there could be no recovery, if suicide was committed within three years after it was issued. This defense being affirmatively pleaded, the trial court found for plaintiff, on the ground that the defendant failed to plead and prove all the elemental facts of a valid defense founded on an exemption peculiar to such an association. *Held*, that the death of the husband was self-inflicted is a fact established beyond dispute as are also the facts on which the right of defendant to interpose the defense of suicide is predicated, and plaintiff was therefore not entitled to recover.

2. ——: Pleading: Proof of License to do Business. To be entitled to the benefit of the liberal laws and rules of construction pertaining to death benefit certificates issued by fraternal beneficiary associations, it devolves on such associations to plead and prove not only that they possess the essential qualifications of such societies, as prescribed and defined in Sec. 7109, R. S. 1909, but also, when incorporated in another state, that they have been admitted to do business in the State in the manner provided in Sec. 7112, R. S. 1909.

3. ——: ——: ——. The certificate of incorporation or that of authority to do business in this State, are not conclusive of the character of the business done, but must be proven by facts tending to show that the association is conducted as one which our laws define to be a benevolent association.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

REVERSED.

*Benjamin D. Smith* and *Bailey & Hart* for appellant.

*T. L. Buford*, and *Fogle & Fogle* for respondent

JOHNSON, J.—This is an action on a death benefit certificate issued by defendant September 11, 1905,

to Isaac H. Newland, a farmer living near Lancaster
in Schuyler county. Plaintiff who is the beneficiary
designated in the certificate was the wife of Newland
whose death occurred at his home January 29, 1906.
All dues and assessments had been paid by him but
defendant on receipt of proofs of death denied lia-
bility. This suit followed and the cause pleaded in the
petition is one founded on an ordinary policy of life
insurance.

The substance of the affirmative defenses alleged
in the answer is that defendant is a fraternal bene-
ficiary society incorporated in the state of Illinois and
authorized to do business in this State; that the cer-
tificate in controversy is not an ordinary policy of life
insurance, but is a fraternal beneficiary contract con-
taining an express stipulation against suicide and that
the death of Newland was self-inflicted. This answer
was not assailed by demurrer or motion and the af-
firmative defenses were put in issue in a reply filed
by plaintiff. A jury was waived and at the beginning
of the introduction of evidence by defendant, counsel
for plaintiff objected to "any evidence to support the
allegations of their answer because it does not state
facts sufficient to constitute any answer to plaintiff's
petition." The objection was overruled "for the pres-
ent" and the court heard evidence of defendant of-
fered in support of the affirmative defenses. At the
close of all the evidence the court, at the request of
plaintiff, gave a declaration of law to the effect that
under the pleadings and evidence, plaintiff is entitled
to recover and rendered judgment accordingly. All
the declarations of law asked by defendant were re-
fused and after unsuccessfully moving for a new trial
and in arrest of judgment, defendant appealed.

An analysis of the rulings of the court on the
declarations of law asked by the respective parties,
discloses that the judgment is based on the conclusion
that defendant failed to plead and prove all the ele-

mental facts of a valid defense founded upon an exemption peculiar to a fraternal beneficiary certificate and, therefore, that the certificate in question should be regarded and treated as an ordinary policy of life insurance against the enforcement of which the defense of suicide is not available. .

To be entitled to the benefit of the liberal laws and rules of construction pertaining to death benefit certificates issued by fraternal beneficiary associations, it devolved on defendant to plead and prove not only that it possessed the essential qualifications of such societies as prescribed and defined in section 7109, Revised Statutes 1909, but also that being incorporated in another state, it had been admitted to do business in this State in the manner provided in section 7112, Revised Statutes 1909. [Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496.] Further defendant was required to plead and prove that during the life of the certificate in controversy it had conducted its business affairs in this State in compliance with the provisions of the statutes relating to such societies. That is to say, that it had been carried on for the sole benefit of its members and their beneficiaries and not for profit; that it had maintained a lodge system in this State with ritualistic form of work and representative form of government; that it had made and given effect to provisions for the payment of benefits in case of death and had provided for the payment of benefits and expenses from assessments or dues collected from its members.

As is well said by the St. Louis Court of Appeals in Thompson v. Royal Neighbors, 154 Mo. App. l. c. 121. "Even the certificate of incorporation or that of authority to do business in this state, are not conclusive of the character of the business done. That is to be determined, in part it is true by an examination of the certificate issued, but it also rests on proof of acts outside of even the certificates; proof of facts

tending to show that the association is conducted as
one which our laws define to be a benevolent associa-
tion.''

This rule has not been impaired by the later de-
cision of the Supreme Court in Armstrong v. Modern
Brotherhood, 149 S. W. 459, 245 Mo. 153, wherein it
is held that the ruling of the insurance commissioner
in granting a foreign association license to do busi-
ness in this State, though not conclusive of the quali-
fications of such association to operate in this State
under the provisions of our laws, is entitled to great
weight ''where there is a real doubt as to the mean-
ing of the law,'' since it is ''the construction of the
law placed upon it by the executive officer of the State
charged with the duty of enforcing it.'' In cases such
as the one under consideration the issues of the right
of such foreign association to do business in this State
and of its compliance with the requirements of our
laws, under proper pleadings are subjects of judicial
inquiry and determination, and the burden is on the
association to show affirmatively that it has fully com-
plied with the laws and is entitled to the benefits they
confer. We, therefore, hold that in order to avail it-
self of the defense of suicide, defendant was required
to plead and prove, not only that prior to the issuance
of the certificate it had been incorporated in the state
of its origin as a fraternal beneficiary society and, as
such, had been licensed to do business in this State,
but that its business had been conducted for the sole
benefit of its members and their beneficiaries and not
for profit; that it had maintained a lodge system with
ritualistic form of work and representative form of
government, had made provision for the payment of
death benefits and had procured funds for the pay-
ment of benefits and expenses from assessments or
dues collected from its members.

Turning to the answer which is very voluminous,
we find a sufficient compliance with the rules of plead-

ing we have just stated. Among other allegations are the following:

"Defendant further avers that it now is and was at all of the times herein and in plaintiff's petition mentioned, a fraternal beneficiary society as defined in the statutes of the State of Missouri, relating to fraternal beneficiary societies; that it is a corporation formed and carried on for the sole benefit of its members and their beneficiaries, and not for profit; that it has a lodge system with a ritualistic form of work and representative form of government, and makes provision for the payment of benefits in case of death of its members; that no provision is made for the payment of benefits in case of sickness, physical disablity or old age; that the fund from which the payment of benefits is made and the funds from which the expenses of the defendant society are defrayed are derived from assessment or dues collected from its members; that payment of death benefits is only made to the families, heirs, blood relatives or to persons dependent upon the member; that prior to and at the time of the issuance of the certificate herein sued on it has applied for admission to transact business as a fraternal beneficiary society under the statutes of the State of Missouri and that it has complied in all respects with the provisions and regulations contained in said Missouri statute relative to fraternal beneficiary societies organized in other states applying for admission to transact business in the State of Missouri, and that it now is and was at all times mentioned in the plaintiff's petition duly authorized by the Insurance Department of the State of Missouri to transact its said business in the State of Missouri as a fraternal beneficiary society under the provisions of 'An act defining and regulating fraternal beneficiary societies, orders, and associations providing penalties for violation thereof; approved March 16, 1897; now found and contained in article 2, chap-

ter 12, of the Revised Statutes of Missouri for 1899;'
and that at all the times mentioned in the plaintiff's
petition and in this answer defendant was doing busi-
ness as a fraternal beneficiary society under and in
compliance with the laws of the State of Missouri per-
taining to fraternal beneficiary societies, and that the
certificate herein sued on was issued and delivered to
the said Isaac H. Newland by the defendant in its reg-
ular course of business in the State of Missouri and
in strict compliance with the laws of the State of Mis-
souri relating to fraternal beneficiary societies and
associations.''

The principal objection to this part of the answer
is that as to some of the constitutive facts it pleads
only conclusions.    This objection would have more
merit had it been presented earlier in the case by de-
murrer or motion to make more definite and certain.
Plaintiff did not assail the answer in such manner but
waited until the trial and, after having joined issue,
attempted for the first time to raise the question of the
insufficiency of the answer by a general objection to
the introduction of any evidence in support of the af-
firmative defenses.    Such practice smacks of ambus-
cade and is not favored by the courts.    We must con-
sider the answer as thought it had been suffered to
pass unchallenged until after verdict and apply to its
allegations the most  liberal rules of  interpretation.
The real question is whether or not it would support a
judgment in favor of defendant and that question
must be answered in the affirmative.    Some of the al-
legations tested by the strict rules of construction ap-
plicable to a pleading attacked by demurrer might be
subject to the criticism of being the statements of
conclusions rather than of facts, but under the liberal
rules of interpretation we should employ at this time,
they should be accepted as sufficient statements of
facts, since plaintiff, in joining issue, so regarded

them and cannot be said in any wise to have been mis-
led by them.

We regard the answer as properly raising the
defense of suicide and we find the proof offered by
defendant shows beyond question that defendant, prior
to the issuance of the certificate, was a fraternal ben-
eficiary society, duly admitted to do business in this
State; that it was conducting its business in strict
compliance with our laws and that the certificate was
issued to Newland as a member duly admitted and ini-
tiated in one of the local lodges operated in this State.
We cannot regard the argument that defendant failed
to prove it maintained in this State a lodge system
and representative form of government, as being sup-
ported by a reasonable understanding of the evidence
which discloses very clearly that the business and op-
erations of the defendant society are conducted on a
uniform plan laid in conformity to the laws of this
State, as well as to those of the State of Illinois, and
that in detail, as well as in their general scope, the
operations of defendant have the lodge system and
representative government as their basic rule.

The evidence of defendant certainly supports its
claim to the benefits of our laws pertaining to fra-
ternal beneficiary societies and the learned trial judge
erred in ruling to the contrary.

In the application for membership made by New-
land appears the statement, "I further understand
and agree that this society does not indemnify against
death from suicide, sane or insane, if occurring within
three years from date of certificate." The certificate
contains the stipulation, "If the member holding this
certificate . . . shall within three years after be-
coming a beneficial member of this society, die by his
own hand, whether sane or insane . . . then this
certificate shall be null and void and of no effect,"
etc. The by-laws in force at the time of the issuance
of the certificate and thereafter, and which were ex-

pressly made a part of the contract, contained the same provision. Therefore the terms of the contract made by Newland for the benefit of plaintiff expressly precluded a recovery by her in the event his death should occur within three years from the date of the certificate and be self-inflicted. The death occurred in that period and we turn to the question of its cause.

In the proofs of death sent by plaintiff to defendant, all of the witnesses whose affidavits were appended, including that of plaintiff, stated that the death of Newland resulted from suicide. This admission of plaintiff did not prevent her from contesting at the trial the issue of the cause of her husband's death, but she offered no evidence on that subject. Defendant read the deposition of the son of plaintiff and her deceased husband who was an eyewitness of his father's death. He testified that when he came into one of the rooms of their home he saw his father sitting in a chair with one of his children on his knee. In a moment his father put the child down, arose and went into the kitchen and shortly returned with a butcher knife which he was attempting to conceal beneath his coat. The witness asked him "what he was going to do and he never answered." He left the house and as he passed through the door began running towards the orchard. The witness followed but did not overtake his father who stopped when he had run, perhaps a hundred feet and twice cut his throat with the knife which, after starting to run, he no longer attempted to conceal. He died immediately from the effects of these self-inflicted wounds.

Thus it appears from undisputed evidence, as well as from the admission of plaintiff which she does not attempt to show was made under any misapprehension of the true facts of the tragedy or of the proper inference that should be drawn from them, that the cause of her husband's death was suicide, and we say the

learned trial judge should have so held as a matter of law.

In the recent case of Richey v. Woodmen of the World, 163 Mo. App. 235, we discussed the question of question of whether or not the defense of suicide could be proved in law and came to the conclusion that the question should be answered in the affirmative. As we said in that case the presumption against suicide is very—strong as the universal instinct for life—but it may be overcome by proof, just as the instinct for life in instances may be overcome by a desire for death. Where the evidence of suicide is undisputed and is so strong that the opposite conclusion could not be said to have an evidentiary foundation but would be the product of mere conjecture or whimsical deduction, there is no issue to go to the jury, since the functions of the triers of fact are confined to the solution of controverted and disputable issues of fact and do not include the right to conjecture and guess about facts and inferences that are all one way and offer no ground for a reasonable difference of opinion,

That the death of Newland was self-inflicted is a fact established beyond dispute as are also the facts on which the right of defendant to interpose the defense of suicide is predicated. The court should have given the declaration of law asked by defendant to the effect that under the pleadings and evidence plaintiff is not entitled to recover.

The judgment is reversed. All concur.