## DEMMIE CUMMINGS, Respondent, v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, Appellant.

Springfield Court of Appeals, April 7, 1913.

1. INSURANCE POLICY: Action On: Defenses: Burden of Proof. The plaintiff established a prima facie case in an action on a beneficiary certificate when she introduced it in evidence, and proved the membership, good standing and death of the insured. The burden was then upon the defendant to establish by a preponderance of the evidence to the satisfaction of the jury, that the insured came to his death by his own hand or act, or as the direct result of drinking intoxicating liquor, where these are the defenses set up and where the provisions of the policy rendered it null and void in either case.

2. ———: Defenses: Evidence Reviewed. Evidence of defense that deceased came to his death from drinking intoxicating liquor examined and reviewed and *held* that it was not of such overwhelming force as to require the trial judge to direct a verdict for the defendant.

3. ———: ———: Suicide. Evidence of defense that the deceased committed suicide examined and reviewed and *held* that it was not of sufficient overwhelming force as to exclude every reasonable hypothesis for the death except suicide, and that the trial court rightly refused to direct a verdict for defendant.

4. **EVIDENCE: Conflict in: Jury to Pass on.** It is for the jury to pass on conflicting oral testimony and weigh the evidence, however great the weight, or preponderance of the evidence may be.

5. **————: Jury's Province to Weigh: Appellate Court Will Interfere, When.** It is not the province of the appellate court to determine where the preponderance of the evidence lies, this being the duty of the jury, subject to the supervising control of the trial court. And the appellate court will interfere only when the preponderance of the evidence is so manifestly against the verdict as to show prejudice, passion or corruption.

6. **VERDICT: Evidence to Support: Conclusive on Appeal.** Where a verdict is supported by any substantial evidence, it is conclusive on appeal.

7. **INSTRUCTION: Ordering Verdict: Conflict in Evidence: Error.** Where the defense of suicide is controverted and the evidence in support thereof is oral and clearly in conflict with that of plaintiff, the burden being upon the defendant to establish the issue, it would be palpable error for the trial court to order a verdict for the defendant, however strongly defendant's evidence might preponderate.

8. **INSURANCE POLICY: Provision of Monument: How Construed.** Under the provisions of a beneficiary certificate, upon the death of the insured, $1000 was to be paid to the beneficiary and $100 was to be paid by the society for the erection of a monument; the by-laws of the society providing that the monument should be erected under the direction of the local camp. There was no evidence that plaintiff beneficiary had erected a monument or contracted for the erection of one. *Held,* that a verdict for the plaintiff in the sum of $1,100 was erroneous. The verdict should have been for $1000. The plaintiff is allowed, however, to file a written remittitur for $100 within ten days and secure an affirmance of the judgment. . [ROBERTSON, P. J., dissenting.]

Appeal from Jasper Circuit Court, Division Number One.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED (*on condition*).

*Arthur H. Burnett* and *James P. Mead* for appellant.

(1)   The court erred in refusing to give appellant's peremptory instruction at the close of the evi-

dence. Richey v. Woodmen of the World, 163 Mo. App. 235; Egan. v. Life Ins. Co., 80 N. W. 1020, 105 Wis. 217; Thieband v. Woodmen of the World, 69 Pac. 348, 65 Kan. 332; W. O. W. v. Hruby, 96 N. W. (Neb.) 998; W. O. W. v. Huyler, 24 Ind. App. 109; Mason v. Supreme Lodge, 109 Ill. App. 10; Hardinger v. M. B. A., 103 N. W. (Neb.) 74. (2) The verdict and judgment were against the evidence, the proof that W. A. Cummings came to his death by his own hand or act being so clear as to leave no issue to submit to the jury. The court should have granted the motion to direct a verdict and failing in that should have set the verdict aside. Woodmen of the World v. Hruby, 96 N. W. 998; Richey v. Woodmen of the World, 163 Mo. App. 235; Agen v. Life Ins. Co., 80 N. W. 1020; W. O. W. v. Thieband, 69 .Pac. 348; Maccabees v. King, 142 Fed. 678. (3) A verdict of a jury whose finding is based upon conjecture and not on the evidence cannot be permitted to stand. Leisenburg v. State, 60 Neb. 628, 84 N. W. 6. (4) The evidence should preponderate but "A preponderance of the evidence is the lowest degree of proof upon which the issues of fact are determined." State v. Henerick, 62 Iowa, 414; Kirchner v. Collins, 152 Mo. 397; Morris v. Railroad, 239 Mo. 717. (5) The court erred in giving plaintiff's instruction numbered three wherein the jury were directed, if they should find for the plaintiff, to include in the verdict "the further sum of one hundred dollars designated in said certificate to be paid for the erection of a monument to the memory of said Cummings." The beneficiary is not in any event entitled to this. (6) The court erred in refusing the fifth instruction asked on the part of the defendant, for the reason it matters not whether W. A. Cummings came to his death by his own hand intentionally or accidentally. If accidental it was the direct result of his intoxication, and relieved the de-

fendant from any and all liability under the policy of insurance.

*Wm. L. Aaron* and *John J. Wolfe* for respondent.

(1) The court properly refused defendant's peremptory instruction asked at the close of all the evidence. Almond v. Modern Woodmen, 133 Mo. App. 382, 113 S. W. 695; Kane v. Knights of Maccabees, 113 Mo. App. 104, 87 S. W. 547; Claver v. Woodmen of the World, 152 Mo. App. 155, 133 S. W. 153; Richey v. Woodmen of the World, 163 Mo. App. 235. (2) Appellant's second contention amounts to but a repetition of the first, considered from a point of time subsequent to the trial. It is respondent's contention that the verdict in favor of the plaintiff was pre-eminently justified and sustained by the evidence, and being for the right party the judgment of the trial court should be affirmed. Almond v. Woodmen of the World, supra; Claver v. Woodmen of the World, supra; Richey v. Woodmen of the World, supra. (3) Mere surmises and conjectures, unsupported by substantial evidence, afford no ground for a verdict. Inferences which warrant a verdict are those derived from the force of the evidence—not plausible, but, perchance, wholly mistaken surmises of what the truth is. Spiro v. Transit Co., 102 Mo. App. 250, 76 S. W. 684; Smart v. Kansas City, 91 Mo. App. 586. (4) It is respondent's contention that the appellant Society is liable also to the beneficiary named in the benefit certificate in the additional sum of one hundred dollars, liquidated damages, upon its disclaiming all liability under the contract, and refusal to act in the premises. Woodmen of the World v. Fraley, 51 L. R. A. 898, 59 S. W. (Tex. 1900) 879.

FARRINGTON, J.—This was a suit brought by the respondent, the widow of W. A. Cummings, who in his lifetime held a beneficiary certificate in the de-

fendant order. It appears that when the deceased met his death on January 23, 1912, he was in good standing in the order. The defendant seeks to evade the payment to the plaintiff, the beneficiary in the certificate, *first,* on the ground that the insured came to his death as the direct result of drinking intoxicating liquors, and *second,* that he committed suicide. The following provisions of the beneficiary certificate are pleaded in the answer:

"I agree that in the event of my death by my own hand or act, whether I am at the time sane or insane, then my beneficiary certificate in said order shall be null and void and of no effect, and all rights and benefits which may have accrued on account thereof shall be absolutely forfeited."

"If the member holding this certificate . . . should die in consequence of a duel or from the direct result of drinking intoxicating liquors . . . or by his own act or hand, whether sane or insane . . . this certificate shall be null and void and of no effect, and all moneys which shall have been paid and all rights and benefits which have accrued on account of the certificate shall be absolutely forfeited without notice or service."

Judgment was rendered on the verdict for plaintiff in the sum of $1100, of which amount $1000 was the amount called for in the beneficiary certificate and $100 was the price to be paid by defendant for the erection of a monument to the memory of the insured.

The appellant complains of the action of the trial court in submitting—under the evidence in the case—the question of fact to be found by the jury as to whether the insured came to his death by his own hand or act or in consequence of the use of intoxicating liquors, and insists that the court erred in refusing to direct a verdict in its favor at the close of all the evidence.

When plaintiff introduced the beneficiary certifi-
cate showing that she was the beneficiary named there-
in, and that the insured was a member in good stand-
ing and had died, she had made a prima facie case,
and the burden was on the defendant to establish by
a preponderance of the evidence to the satisfaction of
the jury that the insured came to his death by his
own hand or act, or that his death was the direct re-
sult of drinking intoxicating liquors. If there is any
evidence of a substantial character from which an in-
ference could reasonably be drawn by the jury that
neither of the defenses had been established, the ver-
dict, being supported by such evidence, must stand as
a verity of the facts found and be conclusive on the
appellate court.

As to the contention that the evidence conclusively
shows that the death of the insured was the direct re-
sult of drinking intoxicating liquors, there is abund-
ant testimony from which the jury could reasonably
find that Cummings did not die from such cause. While
there is testimony that he indulged in occasional drink-
ing spells, and the testimony of one witness is that
he was drinking about four o'clock of the afternoon of
the day of his death, yet none of the witnesses swore
that from his use of intoxicants he was ever rendered
incapable of taking care of himself or attending to
his regular duties. It also appears that on two occa-
sions, within about a year before his death, he had
been taken in charge by police officers as being intoxi-
cated, but on one of these occasions he had been sent
home soon after the officers took him to the police
station and on the other he had been detained over
night and discharged the next morning. The testi-
mony of his employer, Mr. Romare, was that he had
left the insured in charge of the harness shop all that
day until about four o'clock in the afternoon, and that
deceased took in the money and made the entries on
the books; and while this witness says the insured

had been drinking some, he does not say that Cummings was unable to take care of himself and attend to the business. On the other hand, some of the witnesses for the defendant swore that deceased could not be called a drunkard; that at most he occasionally took drinks and was subject to periodical drinking spells. The testimony of the plaintiff on this phase of the case is that her husband had never come home drunk; that on some occasions she had noticed that he had been drinking; that on the afternoon of the day of his death, between four and six o'clock (the time concerning which Mr. Romare testified), she was in the harness shop with their child and a baby of a neighbor woman and talked with her husband and that he showed affection for the child, and introduced her to a traveling man who was in the shop; that when he came home about 7:30 if he was intoxicated she did not discern it. On testimony of this character, it would be advancing far beyond the domain of an appellate court to set aside a verdict and find as a matter of law that the death of the insured was the direct result of drinking intoxicating liquors.

Appellant insists that the evidence points to suicide as the cause of the death of the insured with such overwhelming force as to exclude every other reasonable cause for the death, and that for this reason its peremptory instruction should have been given.

There is no doubt or dispute that the death was caused by a gunshot wound inflicted about one inch back of the right ear of the insured. The evidence shows that he reached home about 7:30 o'clock in the evening, more or less excited about something, and that he called for his gun which had been put away in the folding hed by his wife; that plaintiff took their child and went to a neighbor's house nearby, and that when she returned her husband was lying on the floor with the wound inflicted and in an unconscious state, and that he soon died without regaining consciousness.

From these undisputed facts, it is obvious that the insured lost his life from one of three causes, namely, accident, murder, or suicide.

That the burden is on the defendant to establish its plea of suicide is the well-settled rule in this State. And in Richey v. W. O. W., 163 Mo. App. 1. c. 247, 146 S. W. 461, the following language appears: "The presumption against suicide is very strong—strong as the universal instinct for life—but it may be overcome by proof just as the instinct for life, in individual instances, may be overmastered by a desire for death, and we perceive no reason in law or logic for saying that the fact of suicide cannot be established by law."

From all the facts and circumstances attending this tragedy, shall it be said that it was unreasonable to find that the insured did not kill himself?

It is true, there is evidence on which a jury could find that the shot was fired intentionally by the insured, and, with such a finding, it would be error to set the same aside for want of evidence to support it. On the other hand, we have a case here where the insured reached his home in an excited state of mind, telling his wife he had had some trouble with some one and asking for his gun, saying that some one was going to kill him. The plaintiff testified that before she opened the door for him to come in she heard him in conversation with some one on the front porch, and that about a week before his death he told her he had some trouble with some one. According to her story, she refused to get the gun for him and left him in the room in an excited state of mind but without a gun; that she was gone about five minutes and that when she returned her husband was lying on the floor, hav- ing received the fatal wound. There is no evidence that anyone else was seen in or about the place until after she found him lying on the floor when the neighbors came in to ascertain the cause of the trouble. As this occurred in the month of January between 7:30

and 8 o'clock, the darkness of night had fallen, and had there been anyone in the front yard with whom the insured had carried on a conversation, it is possible the plaintiff would not have seen the person; there is no evidence that she looked to see whether there was anyone in the immediate vicinity of the house. She testified that she took the child and left for fear trouble would follow, but this, of course, could be as reasonably explained on the theory that she did think her husband was about to have trouble with some one who was on the outside of the house as that she thought he intended to commit suicide; and his actions as detailed by her on cross-examination, and according to Romare's testimony as to what she told him immediately after the occurrence, could be justified either on the theory that he was about to commit suicide or that he was in fear of immediate trouble with some one on the outside of the house.

We do not think it is conclusive evidence establishing suicide to show that a man is found lying on the floor of his home mortally wounded when no one saw him inflict the wound, and when there is evidence tending to show that he had had trouble with some one, and when the man's condition in life was in every way pleasant and agreeable. There is a total failure of proof in this record of any motive for suicide. The insured was industrious, the testimony being that for two years he had not missed a day's work. There is no evidence of any indebtedness bearing down upon him; no despondency or grief is shown; his family relations and surroundings, so far as the record discloses, were all that could be desired by a man in his station in life. The only testimony of a positive and direct nature looking to suicide as the cause of the death—other than the physical fact of his body being found with a mortal wound in his head—was that of Romare, who testified that plaintiff immediately after the occurrence told him that the deceased secured the

gun before she left the house and told her to run with
the child and that he fired one shot as she went out
the door.  This alleged statement of the plaintiff, if
true and if made, would tend strongly to establish
suicide; but this was oral testimony of a witness and
not a physical fact evidencing suicide, and, besides,
the plaintiff denies that she made such a statement.
The beneficiary is not precluded from denying, as a
witness in her own behalf, statements appearing even
in the proofs of death which are usually made with
more deliberation than are oral statements made im-
mediately after a tragic death.  [Newland v. Modern
Woodmen, 168 Mo. App. 311, 153 S. W. 1097, 1100.]
Moreover, Romare testified that plaintiff was hyster-
ical at the time she talked to him, and that her talk
was incoherent except the portions detailed by him on
the witness stand.  The jury had the right to weigh
this testimony and judge the credibility of the wit-
nesses and believe the one or the other.  They be-
lieved and found for the plaintiff, and such finding,
under the circumstances of this case, was strictly with-
in their province.

It is to be noted in this case that there is a total
absence of proof that the pistol which was exhibited
at the trial was the one owned by the insured which
the widow says she had previously put away in the
folding bed; that there is no evidence that the size of
the bullet that inflicted the wound was the size of the
bullet that could be shot from the pistol which the
widow says she put away in the folding bed, or that
the bullet that inflicted the wound was fired from the
pistol exhibited at the trial; that there was no attempt
made to show whether there was a powder burn around
the wound, although neighbors and officers were in the
room and viewed the body immediately after the ac-
cident, and although defendant called as a witness the
coroner of Jasper county, who stated he was a physi-
cian of nine years' experience and had been coroner

for five years at the time he examined the dead body of the insured and who otherwise described the nature of the wound. There is evidence that a gun was handed to a policeman by some one unknown to him after the room had become crowded, and the gun which was handed to him was produced at the trial, but there is no evidence whatever that the bullet which caused the death was a size which the gun produced would fire.

This case does not present a state of facts parallel to that found to exist in the case of Richey v. W. O. W., supra, because the facts here submitted to the jury cannot be said to be so clear and indisputable as to exclude every other reasonable hypothesis that the insured committed suicide.

We are permitted to reverse judgments because we, perhaps, as triers of the fact might have believed that the preponderance of the testimony called for a verdict different from the one actually returned; however the probative force of the evidence strikes us, we are not justified in saying in this case that the conclusion of the jury that the deceased met his death from some cause other than suicide was unreasonable and so palpably contrary to the evidence as to warrant a reversal. The only physical fact connected with the occurrence is that the insured was found dead or dying with a bullet wound in his head. The testimony was entirely oral—and the oral testimony which would tend strongly to establish suicide was controverted by oral testimony. It is the province of the jury to pass on conflicting evidence. [Cathey v. Railroad, 149 Mo. App. 134, 130 S. W. 130.] It is for the jury to consider the weight of the testimony, however great the weight or preponderance of the evidence may be. [H. A. Johnson & Co. v. Springfield Ice & R. Co., 143 Mo. App. 441, 127 S. W. 692.] The appellate court will not ordinarily in law cases attempt to determine where the preponderance of evidence lies, that duty devolving on the jury trying the case, subject to the

supervising control of the trial court, and it is only when the preponderance of the evidence is so overwhelming and manifestly against the verdict as necessarily to imply prejudice, passion, or corruption that the appellate court will interfere. [Neil. v. Cunningham Store Co., 149 Mo. App. 53, 130 S. W. 503.] A verdict supported by any substantial evidence is conclusive on appeal. [Trout v. Laclede Gas Light Co., 151 Mo. App. 207, 132 S. W. 58.] Where, as in this case, the issue of fact presented in defendant's answer, i. e., suicide, is controverted, and the burden of proof as to that issue is upon the defendant and the evidence offered to sustain it is oral, and where a clear conflict in the evidence ensues, it would be a blow in the face of all the decisions to hold that the trial judge should arbitrarily have commanded the jury to believe the oral testimony of the defendant—no matter how strongly it may preponderate. [McCrosky v. Murray, 142. Mo. App. 133, 125 S. W. 226; Wolff v. Campbell, 110 Mo. 1. c. 120, 19 S. W. 622.]

As we understand the law, the jury by the instructions should be required to pass on the issue of suicide according to their conception of the perponderance of the evidence. This rule, however, cannot be invoked by the appellate court when asked to set aside the judgment and verdict. Our question is, Can we say from all the testimony that every reasonable hypothesis for the death is excluded except suicide?—that the *only* way to account for the death is to say that it was suicide? This, for the reason that if there is any other reasonable hypothesis on which the death may be accounted for, the appellate court has no right to say that the jury did not rely and find on such other hypothesis.

With reference to the one hundred dollars allowed by the verdict and judgment to the plaintiff for the erection of a monument, the policy provides: "There shall be paid the sum of one hundred dollars

for the erection of a monument to his memory.'' The by-laws of the defendant provides that the monument is to be erected by a contractor through the local camp, and that after the monument has been erected the sovereign monument committee will on proper showing of the erection of the monument draw a warrant on the beneficiary fund in favor of the contractor in payment for the same. This by-law in no wise relieves the defendant from its obligation to erect the monument but merely provides the manner of its erection and of the payment therefor. Under the provision in the policy and that found in the by-law, there is no binding obligation on the defendant to pay this sum to the beneficiary; and should it be turned over to her in this case there is no obligation on her to erect the monument, and should it be so turned over to her and she should fail to erect the monument, this would defeat the very purpose of the provision in the policy, to-wit, that a monument costing one hundred dollars would be erected to his memory. As we conceive this matter, since we have held that the policy is in force and requires the defendant to pay the beneficiary the one thousand dollars, the situation is the same as though the defendant had paid the one thousand dollars without contest, in which event there would have accrued a right to have the monument erected according to the by-law and the provision of the policy. The record fails to disclose that plaintiff has expended any money for a monument or that she has entered into a contract for the erection of a monument. She has the same right to enforce that provision of the policy as she would have had if the defendant had paid the one thousand dollars without contest, and this opinion is not to be construed as relieving the defendant of the duty to erect the monument as agreed. We do not see on what theory the trial court could have awarded plaintiff this one hundred dollars. If the plaintiff will within ten days from the date of the filing

of this opinion file with the clerk of this court a written remittitur of one hundred dollars of the judgment, the same will be affirmed; otherwise, it will be reversed and the cause remanded for a new trial. *Sturgis, J.,* concurs. *Robertson, P. J.,* dissents as to the last paragraph of this opinion.

## DISSENTING OPINION.

ROBERTSON, P. J.—The beneficiary certificate upon which this suit was brought provides for the payment of $1000 at the death of the assured to his wife and further states that, "There shall also be paid the sum of $100 for the erection of a monument to his memory."

This sum of $100 is, I think, on denial of liability by the defendant, recoverable by the beneficiary and should in my opinion be allowed to remain in the judgment of the circuit court.

The laws of the defendant order, adopted as shown by the testimony after the certificate involved in this case was issued, provide for certain action of its committees and officers preliminary to the erection of the monument but even assuming them to be binding on the assured, these laws contain provisions inserted by the defendant, principally if not solely for its benefit, and I think it forfeited all of its rights sought to be gained thereby when it denied all liability, as it did in this case, under its contract.

The assured was, by the express terms of this policy, guaranteed that the $100 would be paid for the erection of a monument to his memory, and in the event of the refusal of the defendant to comply with this provision of the policy, the beneficiary is, I believe, the one contemplated to collect this sum for a monument. The defendant stands in this court asserting that it is its duty and privilege to erect the monument and it is also denying all liability under

the contract. I am unwilling that it should be given another opportunity to expend this sum or to again deny liability.

It may be suggested that if this money were paid to the widow of the deceased that no monument would be erected to his memory at his grave, as he intended should be done, but it is also evident that so long as the defendant denies liability under its contract no monument will be erected by it; and, since it has forfeited all right, if any it had, to insist upon the erection of a monument which conforms to its laws, I think, that a court of justice should trust more implicitly the widow of the deceased, prompted by her natural respect to her deceased husband, to carry out the wishes of the assured, then the antagonistic defendant.

The majority opinion states that there is a remedy different from the one the circuit court applied, and gives the defendant another opportunity to comply with the provisions of its contract and intimates that upon another failure of the defendant to carry out the provisions of its policy that the beneficiary may have a monument erected (*necessarily,* I assume, *according to the laws of the order*) and may then recover only to the amount of $100, even though the monument so constructed may cost her more than that amount. This does not appear to me to be right. It may be that the defendant will now proceed with the erection of a monument but that is not the point in issue, and to be influenced by that supposition is to give more heed to the contesting defendant than to the widow of the deceased.

Logically I cannot see any difference between this case, as to the provision of the policy for the erection of a monument, and a case where a party contracts with a manufacturer to construct a machine of a particular type for which he pays the manufacturer a fixed sum therefor in advance, and wherein the manu-

facturer fails to comply with the contract. According to the law laid down by the majority in this case, it would be necessary for the party contracting for the machine to contract for or build an exact duplicate of the machine ordered before he could recover the sum so advanced the manufacturer.

A reference to the policy, or beneficiary certificate, discloses, as above stated, that there shall be paid $100 for the erection of a monument and, taking this alone, I do not understand that the $100 may not be recovered by the beneficiary upon refusal of the order to comply with its contract. But it is said that the laws of the order, which the majority hold are made a part of the policy, provide a different method of payment. Such a construction, in my opinion, effects a substantial change in the provisions of the policy and as the testimony in this case shows that these laws were enacted after this policy was issued, I am of the opinion that the defendant order has no authority to thus modify its contract and thereby deprive the beneficiary of the right to collect this sum for the purpose specified and contemplated in the policy. [Sisson v. Supreme Court of Honor, 104 Mo. App. 54, 78 S. W. 297; Campbell v. American Benefit Club, 100 Mo. App. 249, 73 S. W. 342; Zimmerman v. Insurance Co., 122 Mo. App. 591, 598, 99 S. W. 817; Hysinger v. Lodge, 42 Mo. App. 627.]

In my opinion the judgment of the circuit court as rendered and entered should stand unmolested.